HIRAM A. MARSTON *vs.* SINGAPORE RATTAN COMPANY.
SAME *vs.* J. GARDNER CURTIS & another.

Middlesex.   November 13, 1894. — March 4, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Contract — Breach — Rescission — Damages.*

If a person conveys property to another under an agreement, the terms of which are subsequently broken by the latter, and the former has enjoyed the benefit arising from the transaction for a period of several months, and the parties cannot be restored to their original positions, the former cannot rescind the transaction and recover the value of the property conveyed, but can only recover damages resulting from the breach of the agreement.

TWO ACTIONS. The first case was an action of contract or tort, in three counts; and the second case, which was against J. Gardner Curtis and Alonzo V. Lynde, was an action of contract, in two counts. The cases were tried together in the Superior Court, before *Bond*, J., who directed the jury to return a verdict for the plaintiff in each case, except upon one count in the first case; and the defendants alleged exceptions. The facts appear in the opinion.

*W. G. Russell & J. Fox*, for the defendants.
*S. J. Elder & W. C. Wait*, for the plaintiff.

FIELD, C. J   These two actions were tried together. At the close of the evidence the court, after declining to direct a verdict for the defendants upon each and all the counts in both actions, submitted in all five questions to the jury, which they answered. The presiding justice thereupon directed the jury to return a verdict in the first case against the defendant on the first and second counts for $13,300, with interest from the date

of the writ, and a verdict for the defendant on the third count, and also directed the jury to return a verdict in the second case against the defendants for the same sum of $13,300, with interest from the date of the writ; and verdicts were returned accordingly. This was done against the objection and exception of the defendants in each case. The jury found in each case that the net value of the property conveyed by the plaintiff to the defendant company above the liabilities assumed by the company was $13,300. The main question raised by the exceptions, and the only question argued by the defendants, is whether, upon the findings of the jury and the admitted facts, the court was warranted in directing the verdicts for the plaintiff for the amount stated. The argument is, that in neither case is the verdict a necessary conclusion of law from the facts found and admitted. The verdicts must have been ordered on the theory that what is called the net value of the property conveyed by the plaintiff to the company was the true measure of damages in each case. The breach of agreement found by the jury was discharging the plaintiff from his position of manager of the business of the company, in violation of the agreement found to have been made with the plaintiff by the company and by Curtis and Lynde to elect and continue him as manager until such time as he and the company should mutually agree to terminate the relation. In the first case, the verdict ordered for the plaintiff on the first and second counts must have been ordered on the theory that it appeared by the findings of the jury and the admitted facts, that the plaintiff had a right to rescind the transaction whereby he transferred his property to the company in reliance upon the agreement to elect and continue him as manager. It appears from the exceptions, that the evidence was that the certificate of incorporation of the company is dated December 11, 1890; that the plaintiff's property was conveyed to the company on January 20, 1891; that the plaintiff was made manager, and continued to act as manager until September, 1891, when he was discharged; and that on October 2, 1891, the plaintiff demanded from the company a return and reconveyance of the net amount of property conveyed by him to the company, or payment of the same, and then brought these suits. The property conveyed consisted of real estate,

merchandise, tools, fixtures, book accounts, etc., and the liabilities of the plaintiff which were assumed by the company were mortgages on the real estate, accounts payable, notes payable, etc. It does not appear that this property remained the same from the time of the conveyance up to the time of the demand. Although the net value of the property of the plaintiff conveyed to the corporation is found to be $13,300, the capital stock of the corporation was $42,000. Lynde testified that the plaintiff owed him at the time of the formation of the corporation $5,000, and that he took fifty shares of stock therefor. Curtis testified that at the same time the plaintiff owed him $17,116.87; that he, Curtis, agreed to furnish money or merchandise to make up his debt to $20,000, for which he was to receive two hundred shares of stock, and that ultimately he furnished merchandise so that his whole debt amounted to $24,600 for which he received two hundred and forty-six shares of stock; that one hundred and twenty shares of stock were allotted to the plaintiff, which were put in the name of Curtis as trustee for the plaintiff under an agreement signed by Curtis, Lynde, and the plaintiff, and one share was put in the name of each of four other persons, making all the shares issued four hundred and twenty. A statement of the value of the whole property made by the plaintiff just before the organization of the corporation was: assets, $49,535.16; liabilities, $34,706.40; leaving the net value $14,828.76. The liabilities, exclusive of $10,000 secured by two mortgages on the real estate, were estimated by the plaintiff then to be $24,706.40. A second statement made by the plaintiff, on December 15, 1890, made the net value $13,913.55. This was afterward cut down by certain deductions, and the plaintiff testified that "at last I consented to call my equity in the property $12,000." This equity he testified, against the objection of the defendants, was worth $13,300 at the time he made the conveyance to the company, and he also testified, against the same objection, that the "value of the property taken in connection with the business which he was conducting" was $18,300. Some of the debts of the plaintiff must in the course of the business which he managed have been paid by the company, and merchandise was bought and sold, and it must in the nature of things have been impossible, at the time the

plaintiff made the demand for a reconveyance, to put the parties
into the same positions as they were in when the conveyance
was made, or when the agreement was made for the formation
of the corporation and for the conveyance to it of the plain-
tiff's property.   The plaintiff does not seriously contend that
the parties could be put into their original positions; he con-
tends that, on his releasing to the company all his interest in it,
the company on the facts found and admitted was bound to pay to
him what he calls the net value of the property conveyed, which
is the value of the property conveyed above his liabilities which
the company assumed.   These liabilities, on this theory, if not
actually already paid off by the company, must be paid off by
the company in the future.   The exceptions recite that " the
plaintiff in court offered, during his case, and at the end of the
second day's trial, to execute a release in any form desired of
his rights in the stock and business and under the agreement of
January 20, and defendant refused to accept any release what-
soever, and at the close of his case plaintiff tendered the release,
a copy of which is annexed, and defendant refused to accept
the same."   This release is dated March 3, 1893, and is a re-
lease to the company, its successors and assigns, of " any and all
interest which I may now have, or which I had on the 18th
day of September, 1891, or upon the 2d day of October, 1891, in
any stock of the company issued to J. Gardner Curtis as trustee
for me in any way."   The agreement of January 20 referred
to is the agreement dated January 20, 1891, signed by Curtis,
Lynde, and the plaintiff, which provided, among other things,
that the certificates of stock should be distributed in certain
proportions, and that the twelve thousand dollars' worth of stock
allotted to the plaintiff should be put in the name of Curtis
as trustee for account of the plaintiff, to be held by Curtis
" as collateral for said Curtis and said Lynde as their interests
may appear, and to be turned over to " the plaintiff on Decem-
ber 12, 1891, in case a dividend of six per cent is earned and
paid on the stock from December 17, 1890, to December 12,
1891, and the provision is that if said six per cent yearly divi-
dend is not earned and paid, " the said twelve thousand dollars
in stock held by said Curtis as trustee shall revert to said
Curtis and Lynde as their interests may appear."   Under this

agreement, it may be somewhat difficult to determine what interest in this stock would have been conveyed by the plaintiff to the company if it had accepted the release.

In the action against the company, the third count, on which the court directed a verdict for the defendant, was a count for damages for the breach of the agreement to employ the plaintiff as manager until such time as the plaintiff and defendant should agree that this employment should cease.

In the action against Curtis and Lynde, the first count alleges the promise to employ the plaintiff as manager, the formation of the company, the conveyance of his property to the company in reliance on this promise, and the making of the agreement of January 20, 1891, and it also alleges that the defendants, " being still holders of a controlling interest in the capital stock of said company, conspiring to deprive the plaintiff of his said business, to render worthless his interest in said company, and to render impossible the performance by the plaintiff of the things to be performed by him under the provisions of said written agreement so as to prevent him from acquiring his stock in said company, procured the plaintiff's discharge from his position as manager of said company, and wrongfully caused him to be prevented from performing his duties as treasurer of said company." The conclusion of the count is as follows: " The plaintiff, having surrendered to the defendants any interest he may have under said agreement, says the defendants owe him the value of the property which he so conveyed at the defendants' instance and request, and in reliance upon their said promise." The second count is, in substance, that the defendants owe the plaintiff the value of the property conveyed to the company at their request and upon their promise " to elect and maintain him as manager of said corporation until such time as he and said corporation should agree that he should cease to be such manager," which promise the defendants, " without cause and without his consent, have totally violated and broken."

It thus appears that the two actions differ essentially in this, that the company received the conveyance of property from the plaintiff, and has had the use of the property, but that Curtis and Lynde received no property from the plaintiff; they re-

ceived their shares of stock from the corporation, and Curtis received as trustee the one hundred and twenty shares allotted to the plaintiff, to be held by him under the agreement of January 20, 1891.

We do not construe the first count in the action against Curtis and Lynde as a count on the written agreement of January 20, 1891, but we regard the allegation in this count concerning that agreement as an allegation tending to show special damage which the plaintiff has suffered by reason of being discharged from his position as manager. The damages resulting from this discharge, we think, upon any view of the cases, are not necessarily the same as the net value of the property when conveyed by the plaintiff to the company, more than eight months before his discharge. We deem it impracticable to attempt now to lay down the rule of damages, particularly with reference to all the collateral contracts into which the plaintiff has entered, but even if it should be assumed that the damages might include the whole value of the plaintiff's interest in the corporation and its business at the time of his discharge, that value is not necessarily or probably the same as what is called the net value of the property conveyed, and Curtis and Lynde can be held liable to the plaintiff on the breach of their promise only for the damages which resulted from the breach; in no event can they be compelled to restore the property conveyed, or the value of the property, because they never had it, and the contract of conveyance was not with them, but with the company. On the case against the company, we are also of opinion that the evidence does not show a case where rescission is possible, and that the claim must be not for the net value of the property conveyed, but for the damages resulting from the breach of the promise to elect and continue the plaintiff as manager. There was no fraudulent misrepresentation of existing material facts in reliance on which the conveyance was made. There was a breach of a promise to do something in the future. This promise was not the whole consideration of the conveyance of the property. Curtis and Lynde had united with the plaintiff in forming a corporation; both Curtis and Lynde had taken shares of stock in it up to the amount of the plaintiff's indebtedness to them respectively, and Curtis had also furnished goods to the corpo-

ration in payment of additional shares of stock; one hundred and twenty shares of stock had been allotted to the plaintiff, and there was evidence that the plaintiff's indebtedness had been assumed by the corporation. The plaintiff has enjoyed the benefit of this transaction for more than eight months before his discharge, and the parties cannot be restored to their original positions. Under these circumstances, the plaintiff cannot rescind the transaction and recover the value of the property conveyed, but can only recover damages resulting from the breach. *Snow* v. *Alley*, 144 Mass. 546. *Black* v. *Ridgway*, 131 Mass. 80. *Bassett* v. *Percival*, 5 Allen, 345. All of the verdicts ordered in these cases, including the verdict for the defendant company on the third count in the first case, must be set aside, as well as all of the answers to the questions submitted to the jury.*

*So ordered.*

---

* These questions were as follows:

" 1. Did the defendants Curtis and Lynde enter into an agreement with the plaintiff that, if he would convey his business and property to the Singapore Rattan Company, they would elect and maintain him as manager of said company until such time as he and the corporation should mutually agree to terminate the relation?

" 2. Did the Singapore Rattan Company after its formation adopt or make an agreement with the plaintiff that, if he would convey his business and property to it, it would elect and continue him as manager until such time as he and the corporation should mutually agree to terminate the relation ?

" 3. Did the plaintiff make the conveyance to the Singapore Rattan Company, relying upon the agreements for management named in the first and second interrogatories ?

" 4. Did the defendants discharge the plaintiff and prevent him from performing his duties as manager of the company without just cause?

" 5. What was the net value of the property conveyed by the plaintiff to the Singapore Rattan Company above the liabilities assumed by the company ? "

The jury answered each of the first four questions in the affirmative; and to the fifth question they answered, " $13,300."