## Thomas H. O'Shea vs. George C. Vaughn.

Essex.    November 6, 1908. — March 6, 1909.

Present: Knowlton, C. J., Morton, Hammond, Sheldon, & Rugg, JJ.

*Contract*, Modification, Substitution, Rescission, Validity, Performance and breach.
*Evidence*, Presumptions and burden of proof.    *Fraud*.

The owner of patents with regard to a certain machine made a contract in
writing whereby he sold an interest in them to the second party to the contract,
who paid therefor $15,000 and agreed to take that amount of the capital
stock of a corporation to be organized by the owner for the manufacture and
sale of the machine, the owner agreeing that, if the machine failed to work
satisfactorily when put in operation at a certain place, he would refund the
$15,000 and would not form the corporation.    The machine did not work satis-
factorily and the purchaser so informed the owner and told him not to form the
corporation, but the latter nevertheless organized the corporation, and, when
the purchaser objected to his having done so, induced him to make a second
contract in which the former contract was referred to and the same provisions
were made as were therein, except that further improvements of the machine
were provided for and, in case after they were attempted the machine still was
not a commercial success by a certain date, then the purchaser was to receive
back $15,000 less one fourth of the amount expended in the matter by the
owner.    The purchaser brought an action of contract containing one count for
$15,000 under the first contract, contending and introducing evidence tending to
show that he had rescinded the second contract because of fraud by the defendant
in procuring it, and another count for $15,000 less the deduction specified in the
second contract.    The presiding judge instructed the jury that the plaintiff could
recover only on one of the contracts, saying, " He must recover either under the
original contract . . . or under the modified contract, whether you call it an
independent agreement or not. . . . It will be a question for you to determine,
. . . if the plaintiff is entitled to recover at all, under which contract he is to
recover, whether the original agreement, or the . . . [later one] . . . modifying
the original agreement."    The defendant excepted to the charge, contending
that the later contract superseded the former, and that, even though the later
one was rescinded, the former was not revived.    *Held*, that the exception must
be overruled, since the instruction correctly stated the law applicable to the
facts in evidence.

Where, at the trial of an action upon a contract in writing, the defendant relies in
defense upon the fact that the contract was modified by a later contract, and the
plaintiff contends and introduces evidence tending to show that he had rescinded
the later contract because the defendant had induced him to make it by falsely
representing that he owned certain foreign patents which he by the later con-
tract agreed to convey to the plaintiff, and neither the plaintiff nor the defend-
ant introduces any evidence as to the value of such foreign patents, but the
defendant testifies that he had an interest in such patents, it is not improper for
the presiding judge to refuse to rule that the plaintiff has not shown a right to
rescind the second contract because he has failed to show that he was damaged

by the defendant's fraud, since it cannot be assumed in favor of the defendant that the foreign patents in which he has testified that he had an interest were valueless.

At the trial of an action upon a contract in writing a material issue was whether a later contract, purporting to modify or supersede the one declared on, had been rescinded by the plaintiff, the plaintiff contending that it had been. The later contract provided that the plaintiff should have $15,000 of the capital stock of a certain corporation, then in existence, and should be its treasurer. He was elected treasurer. The office required no attention and the performance of no duties by him and carried with it no compensation. There was conflicting evidence as to whether the plaintiff ever had received any of the capital stock of the corporation and, if he had, whether he had returned it before the alleged rescission of the contract. He had not resigned as treasurer until several months after the time when by its terms the second contract should have been fully performed by the defendant. *Held,* that the jury were warranted in finding upon conflicting evidence as to the stock that the plaintiff had put the defendant *in statu quo,* and as to the office of treasurer that it was a mere empty title to a useless office, the impossibility of putting the parties *in statu quo* as to which would not be an insuperable bar to rescission of the contract by the plaintiff.

Discussion by HAMMOND, J., of the principles that, in order for one of the parties to a contract to have a right to rescind it, he must return all that he received under it, and that both parties must be placed *in statu quo.*

Where a party seeking to rescind a contract on the ground of fraud acts without unnecessary delay and restores or offers to restore that which he has received under it, the rescission is no less effectual because the wrongdoer by his own act has made it impossible to restore him fully to his former position, or, in the exercise of a right impliedly arising out of the contract, has entered into obligations to others.

At the trial of an action upon a contract in writing a material issue was whether a later contract, purporting to modify or supersede the one declared on, had been rescinded by the plaintiff. The contract declared on gave the plaintiff a right, upon the enterprise to which it related proving unsatisfactory, to recover from the defendant $15,000 which he had paid to the defendant. The later contract, which was not made until after a breach of the former one, gave the plaintiff the right at a later time to recover that amount less one fourth of such sum as the defendant might expend before such later date in seeking to make the enterprise a success. It was undisputed that the defendant had made some such expenditures. The plaintiff contended and introduced evidence tending to show that the defendant induced him to make the later contract by fraud, and based his right to rescind it on that fact. The defendant contended that the plaintiff could not rescind the second contract and recover the entire $15,000 under the first because the defendant would not be placed *in statu quo* as to his expenditures under the second contract. *Held,* that, if the plaintiff's evidence was believed, the defendant must be held in making such expenditures to have acted in pursuance of his own fraudulent schemes, in which case the plaintiff's right to rescind did not depend upon the defendant's being restored to his former position as to such expenditures.

The party of the first part to a contract in writing agreed that, if a certain machine which was the subject of the transaction was not satisfactory, he would repay to the party of the second part $15,000 which the latter had paid to him. The machine did not prove satisfactory, and the parties made a further contract in writing providing that the machine should be improved and that, if by October

1, 1903, it did not prove to be a commercial success, the party of the first part should pay to the party of the second part $15,000 less one quarter of the amount theretofore paid out by the party of the first part in the attempt to make the machine a success. Because of fraud practised upon him to induce him to make the second contract, the party of the second part, after having, as he alleged, given notice to the party of the first part of his intention, disaffirmed the second contract and on February 6, 1906, brought an action of contract to recover $15,000 under the first contract. To prove that he had given the defendant notice of his intention to rescind the second contract, the plaintiff testified that he did not know of the fraud practised upon him until after October 1, 1903, and that before that time he had determined that the machine was not a commercial success and repeatedly sought an accounting with the defendant on the basis of the second contract, that afterwards he repeatedly asked the defendant for a "settlement." The defendant denied that the plaintiff had made any demands whatever upon him, but admitted that, just before the action was entered in court, he had heard "simply from gossip" that the plaintiff was "making a claim for the $15,000." In his testimony the defendant did not appear in a favorable light. The presiding judge, subject to exceptions by the defendant, left to the jury under suitable instructions the question whether the plaintiff gave to the defendant notice of his intention to disaffirm the second contract, and the defendant alleged exceptions. *Held,* that the exceptions must be overruled, since the jury were warranted in finding that the plaintiff made demands upon the defendant from which the defendant understood that the plaintiff disaffirmed the second contract and sought recovery under the first.

CONTRACT OR TORT, with a declaration in six counts. The case was submitted to the jury only upon the second, fourth and sixth counts. Writ in the Superior Court for the county of Essex dated February 6, 1906.

The second count alleged a breach of the contract of June 4, 1903, set out below, and sought a return to the plaintiff of the sum of $15,000 therein mentioned, with interest from July 1, 1903.

The fourth count alleged a breach of the contract of July 2, 1903, set out below, and sought a repayment to the plaintiff in accordance with its terms.

The sixth count alleged that on June 4, 1903, "there was in full force and effect a certain written contract entered into by and between the plaintiff and the defendant ; that by the terms of said contract there was due to the plaintiff the sum of $15,000; that on July 2, 1903, the defendant induced the plaintiff to enter into an agreement which purported to be a modification of said contract of June 4, 1903, by misrepresentations as to additional advantages which would accrue to the plaintiff if he would sign

such modification of said contract of June 4, 1903, and purported as a consideration to the plaintiff to give him an interest in certain foreign patents for an invention for folding collars, cuffs, etc., which the defendant then claimed to own; that the plaintiff, believing that the defendant did own said foreign patents, was induced to sign such modification of the contract of June 4, 1903, and did sign the same; that the consideration of said modification of said contract was an interest in said foreign patents; that the defendant did not own any interest in such foreign patents, which he well knew and the said modification was without consideration, and not binding on this plaintiff, and the plaintiff is entitled to recover the sum of $15,000 under the contract of June 4, 1903, and interest thereon since July 2, 1903."

At the trial, which was before *Schofield*, J., there was evidence tending to show that, previous to June 4, 1903, the plaintiff had been upon friendly business terms with the defendant; that the defendant had become interested in a machine designed for the folding of collars and cuffs, and had purchased at a receiver's sale the assets of the Fenwick Machine Company; that the plaintiff's attention was called to this folding machine by the defendant, and he had certain conversations with the defendant in which the defendant made various representations to him. The result of their interview was the making of a contract, which was introduced in evidence and the substance of which is as follows:

" This agreement made the fourth day of June, A. D. 1903, by and between George C. Vaughn of Salem in the County of Essex and the Commonwealth of Massachusetts, party of the first part, and Thomas H. O'Shea of Peabody in the said County and the said Commonwealth, party of the second part, witnesseth : —

" That the party of the first part having . . . purchased at a Receiver's sale duly authorized by the Court the entire rights in all Patents formerly owned by the A. D. Fenwick Machine Company, and also all Patent Applications, etc., etc., relating to machines for Folding Collars, Cuffs, etc., . . . and having since that date pushed forward to completion the improved Folding Machine, which machine has now been tested and found to be perfect in all its parts, and practical in its operation, and which

machine is now being put into condition for shipment to Troy, N. Y., where it is to be put into practical operation, does hereby agree to sell to said party of the second part one-quarter of the amount of stock coming to him by virtue of the above named agreement by and between the party of the first part and A. D. Fenwick, which amount of stock is $297,500 of the capital stock of the Company which the party of the first part is to form under the said agreement between himself and A. D. Fenwick for $350,000 — for the sum of $15,000 paid to me this day, the receipt whereof is hereby acknowledged.

" The party of the first part still further agrees that in case said machine fails to work satisfactorily after put in operation in Troy, New York, he will not form the Company above mentioned, and he agrees hereby if such is the case and he does not form the company, to refund to the party of the second part the said sum of $15,000."

The contract was signed and sealed by both parties and was witnessed by one Streamburg.

Subsequent to the making of this contract, the plaintiff contended and introduced evidence tending to show that the defendant solicited him to go with him, the defendant, to Troy, New York; that on June 29, 1903, he went to Troy, but that the defendant did not go, but sent one Rood and one Perkins, who accompanied the plaintiff; that the plaintiff arrived at Troy on the morning of June 30 and examined the folding machine then set up and in operation, that he found that the machine was not a perfected machine, and was not a machine that could be put into practical operation and thereupon telegraphed to the defendant as follows : " Don't form company until I see you " ; that he arrived in Salem on the morning of July 2, having left Troy on the afternoon of July 1 ; that he immediately called upon the defendant and asked him if he had received his telegram ; that the defendant admitted having received the telegram, but stated that he had formed a corporation ; that the plaintiff asked him why he had done so, and the defendant gave his reasons; that the plaintiff thereupon demanded the return of his money, and the defendant stated that if the plaintiff would remain in the company for three months more he would give him a half interest in foreign patents on folding machines.   The defendant's tes-

timony as to this interview differed from the plaintiff's, but that of the plaintiff tended to show that the defendant told him that if he would remain in the company, the defendant would give him an interest in his foreign patents, and that he had been informed previous to this time by the defendant that the defendant owned foreign patents. Thereupon the plaintiff and the defendant signed a contract, which was introduced in evidence, and was substantially as follows:

"In consideration of the contract entered into by and between Thomas H. O'Shea and George C. Vaughn on June 4, 1903, whereby Thomas H. O'Shea paid to George C. Vaughn, $15,000 'or 743¾ shares of the stock of the American Folding Machine Company to be delivered to him upon the formation of said company, . . . it is now understood by and between the said Thomas H. O'Shea and the said George C. Vaughn that the folding machine must still have some improvements to make it a commercial success.

"It is now agreed that if the machine is improved and perfected so it is a commercial success, and if the American Folding Machine Company, of which Mr. O'Shea is to be elected treasurer, is formed, the contract made between Thomas H. O'Shea and George C. Vaughn on June 4, 1903, stands good, and Mr. O'Shea is to receive the above mentioned number of shares as per contract referred to for the $15,000, cash paid in. But it is also understood that if, after experimenting, it is found that the machine can not be made a commercial success, said George C. Vaughn is to refund to Thomas H. O'Shea any portion of the $15,000 which is in excess of one-fourth of the amount that has already or will be expended by the said George C. Vaughn up to October 1, 1903, said amount to be according to the private books of George C. Vaughn, which books show the moneys actually expended in promoting the interests of the American Folding Machine Company.

"It is the intent of this agreement that on October 1, 1903, Thomas H. O'Shea has the option of either surrendering his stock in the American Folding Machine Company according to this agreement, and all agreements to become null and void, or of keeping the stock as per the contract made on June 4, 1903.

"The above agreement in regard to 'expenses' mentioned

has nothing whatever to do with the plant which is being erected in Peabody."

This contract was not under seal. At the time of the making of it, the defendant wrote and delivered to the plaintiff on a separate piece of paper the following agreement, which was introduced in evidence:

"Salem, Mass., July 2, 1903.

"The contracts made between Thomas H. O'Shea and myself cover any and all interest I have, or which I may obtain on all foreign patents on folding machines.

"George C. Vaughn.

"Witness: B. H. Streamburg."

It further appeared that, when the defendant received the telegram from the plaintiff on June 30, he had not yet formed the corporation, but that he did so before he saw the plaintiff on July 2, because he felt obliged to under the terms of a contract he had made with one Fenwick, which was referred to in his contract with the plaintiff.

Other facts and such portions of the judge's charge as are material are stated in the opinion. The jury found for the plaintiff on the second and the sixth counts; and the defendant alleged exceptions.

The case was submitted on briefs.

*G. L. Mayberry & P. L. Stackpole,* for the defendant.

*H. F. Hurlburt, J. F. Quinn & D. E. Hall,* for the plaintiff.

HAMMOND, J. There was no question that the contracts were signed on their respective dates, that the $15,000 was paid by the plaintiff to the defendant as stated in the first agreement, and that no part of it has been returned to him. The jury were instructed that the second and sixth counts were substantially for the same cause of action, and that in each of these counts the plaintiff seeks to enforce his right to recover upon the first contract. They were further instructed in substance that in order to recover under either of these counts the plaintiff must show that the machine failed to work satisfactorily after it was put in operation in Troy, and that in forming the corporation upon July 1 the defendant acted in bad faith and not for the purpose

of carrying out the contract; and further, that the plaintiff was bound by the second contract unless he had rescinded it for cause; that on this branch of the case he must show that he was induced to enter into this contract by reason of the material fraud of the defendant, that within a reasonable time after he became cognizant of the fraud he elected to rescind this second contract, and either by word, deed or action manifested such election to the defendant and returned to the defendant what, if anything, he had received under the contract. The evidence was conflicting upon the various matters to which these instructions were applicable, but the verdict being for the plaintiff for the full amount claimed, it is to be assumed that the jury found in his favor upon them all.

The case is before us upon exceptions taken by the defendant to the refusal of the presiding judge to give certain rulings requested. We do not think it necessary to consider them in detail. We adopt the statement made in the defendant's brief that they raise " the question whether the plaintiff was properly permitted, upon all the evidence, to recover upon the contract of June 4, 1903 [the first contract], under the second and sixth counts." And we shall discuss the question in the order in which it is discussed upon the defendant's brief.

1. It is argued by the defendant that the first contract was superseded by the second. We do not think the question whether the second contract was an entirely independent agreement, as contended by the defendant, or only a modification of the first, as contended by the plaintiff, is of any substantial importance. It is not worth while to spend time over the terms by which a situation is to be described when the nature of the situation itself is clear. The second agreement undoubtedly changes the situation of the parties as it was under the first, but it refers to the first as in some respects a possibly subsisting agreement under certain conditions; and it is manifest that the rights and obligations of the parties in certain contingencies named in the second contract cannot be fully determined without reference to the first.

It is apparent, however, that by the terms of the second contract the right which the plaintiff had under the first to the full sum of $15,000 was changed to a right to what might be a much

smaller sum, and that the time of the payment of what, if any-thing, might be due to the plaintiff was postponed to October 1, 1903. Shortly stated, the main changes made by the second contract respected the amount to be paid to the plaintiff, and the time of payment. Upon this branch of the case the presiding judge, saying that the two contracts could not be enforced together, further correctly instructed the jury as follows: " The plaintiff if he recovers in this case on this contract in its original form or as modified cannot recover twice. He must recover either under the original contract the sum of $15,000 with interest, or under the modified contract, whether you call it an independent agreement or not, $15,000 less one fourth of the expenses which by the proper construction of the contract are to be taken. The plaintiff in no event can recover both of those sums. It will be a question for you gentlemen to determine upon the evidence in the case, if the plaintiff is entitled to recover at all, under which contract he is to recover, whether the original agreement, or the agreement of July 2nd, 1903, modifying the original agreement."

2. As to the right to rescind. It is urged in the first place by the defendant that the plaintiff did not attempt to show that he had suffered any damage whatever by reason of the representations of the defendant. In answer to this it is to be said that it cannot be assumed in favor of the defendant that the foreign patents upon the machine in which the defendant testified he had an interest were valueless, and upon the evidence the jury were warranted in finding that they were not, especially in the absence of any testimony by the defendant on that point.

It is next urged that the plaintiff was not in a position to rescind; and in support of this proposition it is said that he held on to the office of treasurer of the company until early in 1904, that he permitted Vaughn to go on expending money upon the machine as provided in the contract, one fourth of which expenditure was to be paid by the plaintiff; and that the plaintiff has not offered to pay any part of this. As to the office of treasurer of the company, the evidence indicated that it required no attention and the performance of no duties and carried with it no compensation, and the jury well may have found that all the plaintiff had was a mere empty title to a useless office, and

that neither the title nor the office could have been of any bene-
fit either to the plaintiff or the defendant.   Upon such a finding
the impossibility of putting the parties *in statu quo* in this
respect would not be an insuperable bar to rescission by the
plaintiff.   The case on this point is clearly distinguishable from
*Marston* v. *Singapore Rattan Co.* 163 Mass. 296, and *Gassett* v.
*Glazier*, 165 Mass. 473, upon which the defendant relies, and
other similar cases.

As to the stock which the plaintiff was to have, it was a fair
question for the jury upon the evidence whether he ever had
received any, and if he had, whether he had given up all right
to it.

A more difficult question arises out of the provision in the
contract that one fourth of the amount " that has already or will
be expended by " the defendant up to October 1, 1903, is to be
taken from the $15,000 to be paid to the plaintiff.   So far as
this provision related to money which had been expended previ-
ous to the contract, it is immaterial.   It is said, however, by the
defendant that between the date of the contract and October 1,
1903, the plaintiff permitted the defendant to go on expending
money thereunder in perfecting the machine.   Although it did
not appear what amount, if any, had been so expended, yet in
view of the stipulation made between the parties at the trial
that should an inquiry as to the amount be necessary it might
thereafter be determined by an officer appointed by the court,
we think that it must be assumed for the purposes of this dis-
cussion that some money had been thus expended.   Was the
situation by reason of that fact such that the plaintiff could not
rescind ?

It is to be noted on the one hand that no part of the sum was
expended for the plaintiff.   He did not own the machine, and
by giving up his stock he cut off all relation to the machine,
even if it was owned by the corporation.   There was no diffi-
culty therefore in restoring him to his former position.   It is to
be noted on the other hand that the change in the defendant's
position was not caused by any act of his having no relation to
the contract.   He had not voluntarily and without regard to the
contract changed his situation, as in a class of cases of which
*Harper* v. *Terry*, 70 Ind. 264, is a type.   In the case before us

the defendant expended money in reliance upon the contract, and in the exercise of a right impliedly arising out of it. It is plain that if this contract be rescinded and the plaintiff be held to be restored to his original position, wherein he was entitled to recover the full $15,000, the defendant will lose some portion of the money expended by him under the contract. He is not restored to his original position. It is equally plain that if the plaintiff, as a condition of rescission, be compelled to deduct from the $15,000 one fourth of the sum thus expended by the defendant, then the plaintiff is not restored to his original position. What is the rule of law applicable to such a situation? Is rescission permissible at law?

Two general cardinal rules are laid down as to the exercise of the right to rescind, of which the first is that the plaintiff must return all that he received under the void contract, and the second is that both parties must be put *in statu quo*, or, as it is frequently phrased, must be restored to their former position. As to the first rule, one of the earliest cases is *Kimball* v. *Cunningham*, 4 Mass. 502, 505, in which Parsons, C. J., said that the defrauded party ought not to retain any part of the consideration, "for he shall not compel even the fraudulent seller to an action, to recover back the property he has parted with in the exchange." And this rule prevails generally in other jurisdictions. A good collection of the cases in England and in the various States may be found in 14 Am. & Eng. Encyc. of Law (2d ed.) 158. In our own State this rule is held with great strictness in actions at law. *Conner* v. *Henderson*, 15 Mass. 319. *Morse* v. *Brackett*, 98 Mass. 205, and 104 Mass. 494. *Bassett* v. *Brown*, 105 Mass. 551. But even this rule has its exceptions. An illustration of one is found in *Head* v. *Tattersall*, L. R. 7 Ex. 7. In that case the purchaser of a horse having the right to rescind returned to the vendor the horse. It was contended however by the vendor that there could be no rescission because when returned the horse had been injured so that he was not in the same condition as when bought. It appeared that while the horse was being driven by the purchaser's groom it became frightened and was seriously injured by running against the splinter bar of the carriage. Upon this, Bramwell, J., in giving judgment, used the following language: "It is said that the

right to return was lost because the rule is that a buyer cannot return a specific chattel except it be in the same state as when it was bought. That is quite true as a general proposition, but in such a case as the present the rule must in my opinion be qualified thus : — The buyer must return the horse in the same condition as when he bought it, but subject to those incidents to which the horse may be liable, either from its inherent nature or in the course of the exercise by the buyer of those rights over it which the contract gave "; and it was held that the return was sufficient. There are other exceptions to this first rule. See also Benjamin on Sales, (5th Eng. ed.) 422 *et seq.*, and cases cited.

There are likewise exceptions to the rule that the party guilty of the fraud must be restored to his former position. In many, if not most, of the cases where it is stated that the parties must both be placed *in statu quo*, the trouble has been that the defrauded party has not restored fully what he received, and hence the other party was not placed *in statu quo*. *Hunt* v. *Silk*, 5 East, 249. *Bead* v. *Blandford*, 2 Y. & J. 278. *Clarke* v. *Dickson*, El., Bl. & El. 148. *Coolidge* v. *Brigham*, 1 Met. 547, 550. *Handforth* v. *Jackson*, 150 Mass. 149. *Croft* v. *Wilbar*, 7 Allen, 248. *Shaeffer* v. *Sleade*, 7 Blackf. 178. *Neal* v. *Reynolds*, 38 Kans. 432. But the exception material to the case before us may be stated in this way : " When a party seeking to rescind a contract on the ground of fraud acts without unnecessary delay and restores or offers to restore that which he has received, it is no defense that the wrongdoer has by his own act made a full restoration impossible on his part or has entered into obligations to others." *Hammond* v. *Pennock*, 61 N. Y. 145. Pollock on Contracts, (3d Am. ed. from 7th Eng. ed.) 713, and cases cited in notes. One of the leading cases upon this subject is *Masson* v. *Bovet*, 1 Denio, 69. It has been cited in New York and elsewhere, and always, so far as we know, with approval. The case is instructive. The plaintiff was induced by fraud of the defendant who, as a judgment creditor, had seized on execution land of a judgment debtor, to purchase the land at a sheriff's sale, at the price of $285. It appeared that the matter was adjusted by the parties, the plaintiff handing to the defendant the note of a third party for $300

and receiving from the defendant the defendant's own note for $15, and from the sheriff a certificate of sale, the defendant paying the sheriff the cost of the levy.  Upon discovering the fraud the plaintiff offered to return to the defendant his note for $15, and to assign to him the sheriff's certificate of sale. This manifestly was not an offer to restore the defendant to his former position, for he had paid the costs of the levy, and, moreover, his original claim against the judgment debtor was less than before.  Yet it was held that the plaintiff was entitled to a rescission.  Beardsley, J., in giving the opinion, speaks as follows : " It was urged . . . that a contract cannot be rescinded by one of the parties alone, so as to authorize a recovery by him of what had been paid upon it, unless the other party is thereby fully restored to the condition in which he stood before the contract was made.  This is certainly the general rule; but in cases of fraud, such as this was, it can only mean that the party defrauded, if he would rescind the contract, must return or offer to return everything he has received in execution of it.  To retain the whole, or a part only, of what was received upon the contract is incompatible with its rescission ; and hence the necessity of restoring what had been received upon it.

" This is not exacted on account of any feeling of partiality or regard for the fraudulent party.  The law cares very little what his loss may be, and exacts nothing for his sake.  If therefore he has so entangled himself in the meshes of his own knavish plot that the party defrauded cannot unloose him, the fault is his own ; and the law only requires the injured party to restore what he has received and, as far as he can, undo what had been done in the execution of the contract.  This is all that the party defrauded can do, and all that honesty and fair dealing require of him."  And the same principle is applied where the defrauding party has paid out money under the terms of the contract.  *Soper Lumber Co.* v. *Halstead & Harmont Co.* 73 Conn. 547, and cases cited.  See also *Plow Works Co.* v. *Rose,* 74 Mo. App. 437 ; *Chamberlin* v. *Fuller,* 59 Vt. 247; *Lee* v. *Simmons,* 65 Wis. 523 ; *Guckenheimer* v. *Angevine,* 81 N. Y. 394.

The principle is applicable to the case before us.  Every dollar spent by the defendant in pursuance of the contract by the terms of which the plaintiff was to pay one fourth added so

much to the burden fraudulently imposed upon the shoulders of the latter, and he had the right by rescission to step from under that burden. As between the parties the money was spent in fraud of the plaintiff and at the risk, known to the defendant, of being finally repudiated by the plaintiff by an act of rescission. In making this expenditure the defendant must be held to have acted in pursuance of his own fraudulent schemes, and hence neither justice nor equity require that in this respect he should be restored to his former position as a prerequisite to the plaintiff's right to rescind.

It is next urged by the defendant that even if the plaintiff was in a position to rescind he never undertook to do it, and that he never gave notice to the plaintiff of his intention to rescind. Upon the question of notice the presiding judge, as above stated, instructed the jury that notice must be given. The precise language of the charge in this respect was as follows: "It is also ordinarily a condition precedent of exercising the right of rescission to manifest the intention to avoid it on the other side. In this case the jury are to say upon the evidence whether the plaintiff at any time manifested or acted in such a way . . . that the defendant had notice that he did not intend to be bound by this second agreement. If those conditions [one of which was the giving of the notice as just stated by the judge] are performed then he is entitled to avoid it and to stand upon the original agreement. If those conditions are not performed, then the contractual arrangement between the parties would be determined by the original contract and the second agreement read together. The amount which the plaintiff could recover would be only the amount provided for in the agreement of July 2nd, 1903, [the second contract] namely, the sum of $15,000 less one fourth of the expenses which by the proper construction of that agreement should be taken." These instructions were correct. Unless the plaintiff had elected to rescind the second contract and proper notice of that election had been given to the defendant, then the plaintiff could not set aside that contract and recover under the first; and if there was no sufficient evidence of such notice, then there was no rescission and the defendant's exception to the refusal of the court to give the fifth ruling requested by him would have been error.

In discussing this question the situation of the parties must be borne in mind. Under the second contract, if the machine became a commercial success, then the defendant was to retain the whole sum of $15,000, and the plaintiff was to receive his stock, all as provided by the first contract. If, however, it was found, after experimenting, that the machine could not be made a commercial success, then the plaintiff was to have returned to him only such portion of the $15,000 as should be " in excess of one fourth of the amount that has [been] already or will be expended " by the defendant up to October 1, 1903. By the last clause of the contract the plaintiff was to have the option of " surrendering his stock . . . according to this agreement, . . . or keeping the stock as per " the first contract. In other words, the plaintiff had an option under this second contract, and that option was based upon the failure to make the machine a commercial success on or before October 1, 1903, and it was an option either to keep his stock at the price named in the first contract, in which case he was to receive back no part of the $15,000, or to surrender his stock and receive back only such portion of the $15,000 as should be in excess of one fourth of the expenditures named above. As has been said, this was an option under the contract, and it was the right and duty of the plaintiff to notify the defendant of his election between these two contractual rights.

But upon being informed of the fraud practised upon him the plaintiff had another option, based not upon the contract but upon the fraud ; and that option was either to affirm or disaffirm the contract. Bearing in mind these two options, one under the contract and one outside of it, we proceed to examine the evidence upon this branch of the case. What was the nature of the notices given ?

On his examination in chief the plaintiff testified that before October 1, 1903, he said to the defendant: " I have seen this machine. I don't want anything more to do with it, and I expect an account from you the first of October of my end of it. . . . I asked him for an accounting probably three or four times " ; that in February, 1904, he refused to take stock sent to him by the defendant through a messenger, and that he said to the messenger, " You take it back. I don't want it " ; that

later he asked one Holder to ask the defendant "to give me an accounting"; that on this occasion he said to Holder, "Mr. Vaughn doesn't seem to get time to have Bessie [the book-keeper] make up an accounting. You go and ask Mr. Vaughn if he won't allow you, who are an expert accountant, to look over those books and get together and make a settlement"; that afterwards he asked Holder what the defendant said and was told that he said that he would let his bookkeeper look the matter over some time, and "shape the thing up" when she had time, but that he would not allow the plaintiff to look over his books; that he first spoke to the defendant "away back in September," 1903; that in January, 1904, he asked Vaughn if he had not "got that thing shaped up so as to make a settlement," and that the defendant said that he had not, giving as a reason that his bookkeeper was busy and that "when she gets time we will fix it up"; that he spoke to the defendant about it in August, 1904, and also "some four to six weeks" before the bringing of the suit, which was in February, 1906; that the last time he spoke to the defendant about it he asked the defendant if he did not think that he (the plaintiff) was entitled to a settlement, and that the defendant said yes, and added that he was going to give him one. On cross-examination he testified that he told the defendant in September [1903] that he "wanted a settlement," and that he did not care to be identified with the enterprise any longer; that he did not say he wanted his money back; that he said he wanted an accounting, which was "equivalent to it." That at this time he did not understand that by reason of false representations the defendant was indebted to the plaintiff for the whole $15,000; that "all I looked for was to have an accounting"; that he understood that the defendant by reason of the failure to carry out his agreement owed him the "difference between $15,000 and one-quarter of what he had put into this." He further testified that the first time he made a demand upon the defendant was "some time in September before the contract had expired"; but he further testified "that he made demands upon" the defendant "between that time and August, 1905," and that "he demanded a settlement at one time upon going on a train to Boston."

It is strongly urged by the defendant that in all this the plain-

tiff was simply asking for an accounting in accordance with the terms of the second contract, and not an accounting based upon the right to avoid the second contract for fraud.  There is much to be said in favor of this view, and so far as respects demands made before the plaintiff had knowledge of the fraud practised upon him it would seem correct.  But the plaintiff testified that the demands continued up to nearly the time of the bringing of the action.  They were verbal, and many of them were made after the plaintiff was aware of the fraud, if any, which had been practised upon him.  The defendant denied that any demand whatever had been made upon him.  He admitted however that just before the entering of the action he had heard that the plaintiff " was making a claim " upon him " for his $15,000."  Upon being pressed upon this matter he said he heard this " simply from gossip," and that he did not know who told him.  The question before us is not as to the weight of the evidence ; — that was for the jury.  There are indications upon the record that the defendant in his testimony on the matter of demand and as to the manner in which he found out before the action that the plaintiff was making a claim upon him for the whole $15,000 did not appear in a very favorable light.  The verdict shows that the jury did not believe his statement that the plaintiff never had made any demand upon him ; and they may have thought that upon all the evidence the most reasonable explanation of the defendant's knowledge that the plaintiff was asking for the whole $15,000 was obtained, not " from gossip," but from the demands made by the plaintiff, and that, whatever was the precise language in which the demands were made, the defendant finally understood they were for the whole sum and that the plaintiff intended so to be understood.  We cannot say as matter of law that such would have been an unwarrantable view of the evidence.

The jury were warranted in finding that the second contract was rescinded for fraud.  The ruling that in case of such rescission the plaintiff could resort to his rights under the first contract was correct.  *Baker* v. *Corey*, 19 Pick. 496.

*Exceptions overruled.*