PRIESTLEY v. JOHNSON, *Appellant.*

**A House, when Personal Property.** A house erected under an agreement with the owner of the land that the builder shall have the right to remove it, is personal property as between the builder or any one claiming under him, and the owner of the land or any. one purchasing from him with knowledge of the agreement.

*Appeal from Dallas Circuit Court.*—HON. R. W. FYAN, Judge.

*Peter Wilson* and *E. Y. Mitchell* for appellant.

*A. D. Matthews* for respondent.

The house having been built with the knowledge and consent of Mothershead, it was personal property, and clothed with all the incidents of personalty. *Matson v. Calham,* 44 Mo. 368; *Hines v. Ament,* 43 Mo. 298; *Aldrich v. Parsons,* 6 N. H. 555; *Osgood v. Howard,* 6 Greenl. 452; *Ashman v. Williams,* 8 Pick. 402; *Doty v. Gorham,* 5 Pick. 489; *Mott v. Palmer,* 1 Comst. 571; *Rogers v. Woodbury,* 15 Pick. 156; *Coleman v. Lewis,* 27 Penn. St. 291. The subsequent sale of the house to respondents, or the land to Johnson, did not change the character of the property. *Lowenberg v. Bernd,* 47 Mo. 297; *Ham v. Kendall,* 111 Mass. 298; *Morris v. French,* 106 Mass. 326; *Howard v. Fessenden,* 14 Allen (Mass.) 124.

NORTON, J.—This is a suit, instituted in the circuit court of Dallas county, for the recovery of damages for the wrongful taking and withholding from plaintiff a certain house described in the petition. The answer of defendant puts in issue the allegations of the petition, and sets up that the land on which the house in question is located was on the 14th of December, 1872, conveyed by one Mothershead and wife to Peter Wilson, in trust, to secure the payment to defendant of the sum of $1,750, and that on the 24th day of February, 1873, said Mothershead

again conveyed said real estate to said Wilson, in trust, to secure to appellant the payment of the sum of $184, and that on the 15th day of September, 1873, the said Mothershead again conveyed the said lands to Wilson to secure the payment to appellant of the sum of $267.17, and that all of said deeds were made, executed and delivered without any reservation of the house in question contained therein; and that on the 9th day of December, 1873, to satisfy the debts mentioned and secured in said several deeds, and a further consideration sufficient to make the whole sum paid for said lands $4,000, the said Mothershead, by general warranty deed, conveyed the said real estate in question without any reservation of said house specified therein; that appellant is the legal owner of said house, &c. The answer was denied by replication and a trial had, which resulted in a judgment for plaintiff in the sum of $250, from which the defendant has appealed to this court.

The evidence offered by plaintiff in support of the petition tended to show that one Rathburn built a house on the land of one Mothershead, with the understanding that he should have the right to remove it; that the house so built was afterwards sold by said Rathburn to one Crank and his wife, and Mrs. Human, now the plaintiff, Priestley; that the purchase was made in 1871, with the knowledge and consent of Mothershead, who encouraged them to buy, and assured them that if they bought the house they could remove it at any time they chose to do so. It also tended to show that Johnson, before he purchased the land of Mothershead, was informed of plaintiff's claim to the house, and recognized her right to it; that she rented the house to Mothershead before he sold to defendant, and also to defendant; that plaintiff, Mrs. Priestley, had acquired all the right of Crank and wife to said house; had applied to Johnson for permission to remove it, which he refused, and appropriated the house to his own use. The defendant offered in evidence three deeds of trust, executed by Mothershead, and conveying the land on which the house

was located to Wilson, in trust, as stated in his answer, and also a deed from Mothershead to defendant, for the property. These deeds proved the statements in the answer in regard to them. Defendant also offered in evidence a deed of mortgage to the same land from Mothershead to one Booth, dated in 1869, and also the transcripts of two judgments obtained against Mothershead, before a justice of the peace, for the sum of $268.17, filed in the office of the clerk of the circuit court of Dallas county on the 13th day of October, 1873. Defendant testified that the money to secure which the first deed of trust mentioned in his answer was executed was applied to the payment of the balance due on the Booth mortgage and the two judgments. He further testified that he had no knowledge or notice of plaintiff's claim to the house.

Eight instructions were given on behalf of plaintiff, substantially declaring that if the jury believed from the evidence that the house was built on the land of Mothershead, with his consent and with an agreement that it might at any time be removed, it did not constitute any part of the realty, but was personal property, and that if defendant bought the land afterwards of Mothershead, with knowledge of plaintiff's claim to the house, and appropriated it to his own use, refusing to allow plaintiff to remove it and withholding it from her, they would find for plaintiff the value of the house. Although the instructions given were all excepted to, our attention has been called only to the following as objectionable, viz.: 1. "If the jury believe from the evidence that the house sued for was built by one Rathburn on the land of R. M. Mothershead under an agreement with said Mothershead, among other things, that he, said Rathburn, should have the privilege of removing said house at any time he desired, then and in that case said house was the personal property of said Rathburn, and no part of the real estate as between Rathburn and Mothershead." 2. "If the jury believe from the evidence that one Rathburn built and used the house on

the land of Mothershead, and that he sold the same to Crank and wife, or either of them, and Mrs. Priestley, (formerly Human,) and that subsequently Mrs. Priestly, by gift, purchase or otherwise, succeeded to all the rights of said Crank and wife, or either of them, and that said house was purchased from said Rathburn with the knowledge or consent of said Mothershead, or with the privilege of removing the same at their option, then and in that case the house was personal property as between said parties, or either of them, and said Mothershead, and formed no part of the realty." 5. " The jury are instructed that positive evidence is of more value than negative, and that they are the sole judges of the weight of the evidence and the credibility of the witnesses, and that if they believe that any witness swore willfully false they have the right to disregard his testimony altogether or any portion of the same." 10. "The court instructs the jury that if they believe from the evidence that Mrs. Human, Mrs. Crank and her husband, Mr. Crank, purchased the house in controversy, and that Mr. and Mrs. Crank relinquished to Mrs. Human their right in said house, and that defendant had knowledge of said purchase by the said Mrs. Human of Mr. and Mrs. Crank at the time he purchased the land upon which the house is situated, they will find for the plaintiff." To the giving of these instructions the appellant excepted.

The objection urged to the first and second instructions is that there was no evidence upon which to found them. This position is not tenable, as there was not only evidence, both direct and indirect, bearing upon the matters of fact referred to the jury, but sufficient, we think, clearly to establish them. There is nothing in the evidence showing that Rathburn, who built the house, ever claimed any interest in the land, and the statement of Mothershead in the evidence that he had agreed to give alternate lots to a railroad company if they located a depot on the land, and that if the lot on which the house was located fell to him he would sell it for $100, and if it fell

to the railroad company it could be bought for a less sum, was nothing more than a mere contingent proposition to sell, not accepted nor binding on him, and subject to withdrawal at any time. Besides this, plaintiff testified that Mothershead encouraged her to buy, with the assurance that she could remove the house at her pleasure, and that she had frequent conversations with Johnson, the defendant, before he purchased the land as to the situation and ownership of the house, and that in one of them he advised her to have the house insured. This was corroborated by other evidence. Not only did the evidence justify the court in giving the instructions, but the legal conclusion based upon the facts submitted to the jury for their determination is unquestionably correct. When a building is erected by one upon the land of another with his consent, upon an agreement that it may be removed at the will of the builder, it does not become a part of the realty, but continues to be a personal chattel and the property of him who builds it. *Goodman v. H. & St. Jo. R. R. Co.*, 45 Mo. 34; *Lowenberg v. Bernd*, 47 Mo: 297; *Hines v. Ament*, 43 Mo. 298; 10 Maine 429; 8 Pick. 402.

The tenth instruction, though subject to some verbal criticism, is not erroneous when considered, as it should be, in connection with those which precede it.

The same remarks apply to the objections made to the fifth instruction, in which the jury were told that they were the sole judges of the credibility of witnesses, and if they believed that any witness had willfully sworn falsely that they might disregard his evidence entirely. The objection urged to this instruction is that it omits to state that the false statement must be in regard to some material matter. This court has frequently reversed judgments because in instructions like the one complained of the *scienter* of the witness as to false swearing was left out, on the principle that the witness who intentionally swears falsely as to one thing may do so as to others. It is the willfully swearing falsely that casts discredit on the state-

ments of a witness, as contradistinguished from a statement made through simple mistake. While the instruction would have been more in harmony with exactness had it referred the statements to some issue in the case, we cannot see, in the light of the evidence, that the jury were misled by it, as the evidence fully sustained the conclusion reached by them.

Judgment affirmed, with the concurrence of the other judges.

AFFIRMED.