A. C. FREEMAN v. P. D. LEONARD.

*Fixtures—Merger—Execution  Sale—Purchaser—Penalty.*

1. If the owner of personal property affixes it to the premises of another for a temporary purpose, and under an agreement with the owner of the soil that such property may be removed when the purpose is accomplished, it will not merge its character as personalty in the land to which it has been attached, nor will the title thereby pass from the owner.

2. If upon a sale under execution the property is purchased for the defendant with funds supplied by him, while it would be inoperative as a sale against other creditors, it is effectual as such between the officer making it and the execution debtors, and the officer will incur the penalty provided for a failure to comply with the statutes regulating the method of making sales.

3. Where, in an action to recover from a Sheriff the penalty for a failure to properly sell property seized under execution, the complaint alleged that the property so sold was realty when in fact it was personalty, and the proofs showed that the Sheriff had not complied with the requirements of the law in respect to the sale of personalty; *Held,* that the plaintiff was entitled to recover the penalty.

(DAVIS, J., dissenting.)

This is a CIVIL ACTION, which was tried before *Clark, J,* at Fall Term, 1887, of DAVIDSON Superior Court.

Jane R. Wilkes, doing business in the name of "The Mecklenburg Iron works," having recovered judgment in the Superior Court of Davidson against the plaintiff in this action, A. C. Freeman, John Southerly and J. M. Peacock, trading under the partnership name of Freeman, Snotherly & Co., (which judgment was docketed in said Court on May 8th, 1886,) sued out execution on the same day and delivered it to the defendant, who was Sheriff of said County, to be carried into effect. The latter made return thereof to·the ensuing term, with endorsement as follows:

" I have this day levied on the following personal property and taken the same into my possession to satisfy the within execution, viz.: One boiler, one engine, one corn rock, one flour mill and bolting cloth, one smutter, one planing matcher and matching machine, lot of belting and pulleys, three saws, one big saw and saw mill.

P. D. LEONARD, *Sheriff.*

May 21st, 1886."

Another endorsement shows a sale of the several articles and the price obtained for each, and the appropriation of the proceeds of sale, to-wit: $373.41, to the discharge of the debt, interest and costs, in the aggregate $182.23, bearing date May 31st, 1886, and his official signature thereto.

The present action, begun on June 19, 1886, is prosecuted by said A. C. Freeman, a defendant in that suit and plaintiff in this, against the said P. D. Leonard to recover the penalty imposed by § 461 of *The Code,* for selling property under execution contrary to the directions of Chapter 10, of which that is part, and, after an adverse judgment of the Justice of the Peace, removed by defendant's appeal to the Superior Court.

It was there tried upon a single issue: Did the defendant sell real property, as claimed, contrary to the true intent and meaning of §§ 456 and 487 of *The Code?* Answer, No.

It will be observed that no exception is taken to the restricted form of the inquiry, it being confined to land, while the complaint embraces property of any kind.

Besides the facts above summarily stated, the plaintiff further proved, that on the date of levy the Sheriff took possession of the grist mill, saw mill and planing mill, all under the same roof, and locked up the building and delivered the key to J. M. Badgett to hold, with instructions to him to open the mill when necessary to deliver grists to customers, and to allow hands to work in the shed, but not to run the

machinery; that the property levied on and sold consisted of a saw mill, a planer bolted to timbers on the ground and framed into the building; a boiler in the mill set up and encased in masonry; an engine bolted to the timbers in the building; also mill stones, both flouring and corn, running and framed in the mill when built.

It was admitted that the defendant advertised at the court house door and some other places in the county by posters, nine days at court house and ten days at the other places. It was admitted that the above property belonged to the defendants in the execution.

It was proved also that J. M. Badgett was the general agent of the firm of Freeman, Snotherly & Co., in the transaction of the firm business generally.

The said J. M. Badgett further testified, that on the day of sale A. C. Freeman, one of the firm, placed in his hands $250, and instructed him not to let the property be sacrified, but to bid it off, which he accordingly did; that after the sale, immediately thereafter, on same day, Snotherly, another of the firm and one of the defendants in the execution, gave him a check for one hundred dollars, and also that Peacock, the other member of the firm, paid him some money; that he thought Freeman furnished the money out of his own funds. It was further testified by the witness Badgett, that none of the property was removed from its position, either by the Sheriff or himself after the sale, and that immediately thereafter the firm went into possession of all the property and began operating the mill as usual.

His Honor held that the property levied on and put up by the Sheriff was realty, and required thirty days' notice, as for sale of real estate, and the only question was whether there was a sale, as contemplated under the said section of *The Code*.

The plaintiff contended that as the Sheriff actually sold and left Badgett in possession, and made return as shown in

the exhibits, he could not be heard to deny in this action that there was a sale, and that according to the evidence there was a sale, and that the issue submitted by the Court should be answered in the affirmative by the direction of the Judge, and asked the Judge so to charge. The Judge refused the instructions and the plaintiff excepted.

The defendant insisted that if Badgett bid off the property as the agent of the firm, defendants in the execution, or for them, that then there was no sale, such as is contemplated under said section of *The Code*, and that it should be left to the jury to decide, under the evidence, whether he so purchased, and if he did, that the Judge should instruct the jury to find the issue in favor of the defendant.

The Judge charged the jury that if they found from the evidence that Badgett bid off the property as his own, and was to hold it as security for the amount paid by him, with the right in the defendants in the execution to redeem, that this constituted a sale; but if he bid off the property for the defendants in the execution and only looked to them personally for the repayment of any money advanced by him in the payment of his bid, then there was no sale, and they should answer the issue, " No." Plaintiff excepted.

There was a verdict for the defendant. Judgment and appeal by plaintiff.

*Mr. J. B. Batchelor*, for the plaintiff.
No counsel for the defendant.

SMITH, C. J., (after stating the case). We do not pass upon the question as to the proper plaintiff to sue and whether the County, to whose use one moiety goes, should not be associated with the plaintiff, as no such point is made in the case.

The case was tried under the ruling of the Court, and in accordance with the terms of the issue, as if the sale was of

real estate in fact and whether the statutory requirements were observed in conducting the proceedings for such sale. The case does not state under what circumstances, and by what arrangement with the owner of the soil, these articles were there placed. If for a temporary purpose, and to be removed when that was accomplished, the mill and other things would not merge their character as personalty in the land upon which they stood, and the property therein vest in the owner of the premises who assented to this temporary use, and the property would not thereby pass to the latter and constitute and become his improved real estate, as would be the effect if such erections and fixtures owned by one and placed upon his own premises and the title to the articles as unchanged personal estate would remain in the same proprietor. It is quite certain the Sheriff acted under the impression that he was levying on and selling personal property, as well from his designating it as such, as from his manner of selling in detached and separate articles, and so also the plaintiff considered his action by placing funds in an agent's hands to buy in the property when sold.

Again, the case states that it was admitted " that the above property (that is, such as was seized,) belonged to the defendants in the execution," thus discriminating between the title to the goods and the title to the land upon which they stood, and indicating some such understanding between the separate proprietors, as has been suggested.

But this does not furnish a means of escape from the penalty, for, as personal goods, they were advertised but nine days at the court house, though the full period of ten days, as pointed out in the statute, elsewhere.

The charge of the Court places the case before the jury as making the liability depend upon an effectual legal sale of the goods in passing the property to the purchaser, and instructed them if the bidding was in fact for the defendants, and their money was used in paying it, there was no sale in

the sense of the statute and there would have been brought about no change of property. This would be so if another creditor seized and sold it, the sale not obstructing his access to the debtor's property. But the levy put the property in the officer, and it would pass *out of him* by the sale, and if conveyed by deed the estate would pass to the purchaser, though he would hold in trust for the debtor. But the present case is not so strong, for the sales exceeded the sum deposited with Badgett the bidder and supposed agent by $123, while the other partners after the bidding though on the same day supplied him with more money.

Aside from the legal consequences of such a sale we understand the statute as applying to it as well. It was in fact a sale, a passing of the property vested in the officer by the seizure from him to the purchaser and as equally demanding an observance of the mandate of the statute in making the sale as if a stranger bought, for it is not less official delinquency in the officer in either case, and the penalty is incurred when he proceeds to sell and does sell without a proper regard to the law.

There is error, and the judgment must be reversed and a new trial awarded.

Error.

DAVIS, J., (dissenting). The plaintiff seeks in this action to recover the penalty of $200 of the defendant, who is the Sheriff of Davidson County, " for selling real property " contrary to ' § 456 and § 457 of *The Code* " This is the allegation in his complaint, and the only allegation as the record shows.

The Sheriff did not sell any real property, he did not advertise, or propose, or attempt, to sell any real property. In all that the Sheriff did, the evidence does not disclose the first element of a sale, or of an attempt to sell " *real property*," so he can not be liable for that.

If the property sold was *personal property* then the plaintiff can not recover, for there is no *allegation* of that, there is no complaint of that.    That must be advertised under § 460 of *The Code.*

The plaintiff can not recover the penalty for the sale of real property contrary to §§ 456 and 457 as alleged because there was no such sale made or attempted.    He can not recover the penalty for the sale of *personal property* under § 460, because there is no such allegation or complaint.    So *quacunque via* he must I think fail in this action, and a new trial, it seems to me can only result as the last.

The action for the penalty should be in the name of the State, *The Code,* §1213.    *Duncan* v. *Philpot,* 64 N. C., 479.

I do not think the plaintiff's action, as it appears in the record, is supported either by merit or law.