HENRY HANDFORTH *vs.* CHARLES B. JACKSON.

Franklin.    September 18, 1889. — November 26, 1889.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Contract of Sale — Restraint of Trade — Good Will of Business — Rescission —
Recovery back of Consideration.*

A landowner engaged in the ice business sold it, and agreed, upon the delivery of certain property to him by the purchaser, to convey to him, in addition to the business, its good will, with certain tools and ice-houses on the land, always understood by the owners thereof to be personal property, and to perform certain days' labor for him, and, having given a lease of the land to the purchaser stating that the ice-houses were the lessee's property, which he might remove during the term, conveyed the land in fee to a third person who had knowledge of the lease. The purchaser delivered the property to the seller, and took possession of the ice-houses, the business, and the tools, and received a part of the days' labor, the rest of which the seller was ready to perform, and had the benefit of the good will. *Held,* that the ice-houses were personal property, which belonged to the purchaser and were not affected by the conveyance, and that he could not recover back the property delivered by him to the seller less the value of what he had received as upon a rescission.

CONTRACT. The original declaration was as follows: " And the plaintiff says that said Jackson and one Oscar Bardwell

were the owners of a certain tract of land situate in Greenfield in said county, upon which land and constituting a part of the realty were four ice-houses. And the plaintiff says that in consideration of eleven cows and two horses, which he, the said plaintiff, delivered to said Jackson and which he, the said Jackson, accepted, he, the said Jackson, bargained and sold to him, the said plaintiff, the said four ice-houses and sundry tools, and further agreed to give him five days' work with a double team. And the plaintiff says the said Jackson delivered to him the said tools and has performed for him three days' work with a double team and no more. And the plaintiff says that afterwards the said Jackson and Bardwell conveyed said land and said ice-houses by a good and sufficient deed of warranty to one Caroline M. Boutwell, who has taken possession of said premises, and forbidden the plaintiff to interfere with the same."

Subsequently the plaintiff was permitted to amend his declaration by adding a count upon an account annexed, the only item of which recited that the defendant on December 3, 1886, owed the plaintiff six hundred dollars for eleven cows and two horses.

The answer, among other defences, contained the following: "The defendant says that he had the said cows and horses from the plaintiff under and in pursuance of a special contract by and between the plaintiff and the defendant, which special contract has never been rescinded; that the defendant was engaged in a profitable business, to wit, the business of cutting, storing, and selling ice in Greenfield; that he had a large number of regular customers, and owned certain tools for cutting ice, and certain ice-houses; that the plaintiff was also engaged in the ice business in said Greenfield, and in consideration that the defendant would withdraw from said ice business and from competition in the same with the plaintiff, and would transfer to said plaintiff the tools and ice-houses aforesaid, and upon request of the plaintiff perform five days' work with his team for the plaintiff, the plaintiff delivered the cows and horses aforesaid to the defendant, and the defendant did withdraw from the business of cutting, storing, and selling ice and has not since engaged in the same, and did transfer said tools and ice-houses to the plaintiff, and has performed three days' work with his team for the plaintiff,

and has been at all times and is now ready to perform the other two days' work when requested by the plaintiff, and the plaintiff has never requested the defendant to perform the other two days' work, and the plaintiff has had the possession, use, and benefit of the said tools and ice-houses, and of the work performed by the defendant, and of the defendant's withdrawal from the said business of cutting, storing, and selling ice."

Trial in the Superior Court, before *Barker*, J., who reported the case for the determination of this court, in substance as follows.

On August 12, 1885, Jackson, who had previously erected an ice-house on land adjoining a pond, while in possession of both under a lease, with one Bardwell took from the owner a warranty deed of the land including the pond, in which deed no mention was made of the ice-house. Subsequently Jackson, with Bardwell's knowledge and consent, erected three additional ice-houses, which with the ice-house already built Bardwell acknowledged to belong to Jackson as his individual property, with the right to remove them. These ice-houses were joined together, and could be removed from the premises without any substantial injury to the freehold. Each was about forty feet long, twenty-five feet wide, and twenty feet high to the eaves; the studding was tenoned to the sills; they were boarded inside and out with cheap spruce boards; the roofs were made of the same material and battened; the sills rested upon thin flat stones placed from six to eight feet apart, with the exception of one corner where the ground was lower, where there was a low stone wall extending under the sill a few feet, and were in the main a little higher than the surface of the ground, and were banked on the outside with sawdust to prevent the air from circulating under them.

On December 3, 1886, Jackson, who for several years had been engaged in the ice business, using the ice-houses therein and getting his ice from the pond, entered into the agreement set out in the answer, in pursuance of which Handforth delivered to Jackson the cows and horses, which were valued at four hundred and fifty dollars, and Jackson delivered to Handforth the ice tools, valued at one hundred and fifty dollars, and performed three days' work with a double team, and had not been

requested to perform the other two. It was also agreed between them that the ice-houses should be the property of Handforth, and that he might remove them from the premises. Subsequently, on the same day, Jackson and Bardwell leased the pond to Handforth for the term of five years, " with the land adjacent thereto on which the ice-houses now stand, and so much land adjacent thereto as may be necessary for cutting, storing, and removing the ice from said pond and ice-houses, with a right of way, to pass and repass, on foot and with teams, at all seasons, from said pond and ice-houses to the highway, over and across the land of the lessors. . . . This lease does not include the ice-houses on said premises, which are the property of the lessee, and the lessors agree may be removed by him, or his executors, administrators, or assigns, at or before the expiration of this lease or any renewal thereof."

Handforth immediately entered into possession of the premises under the lease, and of the ice-houses, and, except as stated, has continued in possession of them. Jackson ceased from this time to be engaged in the ice business. The sale of the good will of the business was a part of the agreement, and Handforth has had the benefit of such good will. Jackson and Bardwell continued to own the leased premises until June 10, 1887, when they executed to Caroline M. Boutwell a warranty deed of them, which was subsequently delivered. This deed did not mention or in any way refer to the lease, or to the ice-houses, or to any rights of Handforth in or to the same. In the summer of 1887, Mrs. Boutwell tore down one of the ice-houses, contending that she had no knowledge of the existence of the lease, or of Handforth's claim of ownership in the ice-houses, and forbade his removing any of the lumber. The ice-house torn down by her was in a ruinous condition, and not in use at the time, and she did not remove any of the material from the leased premises. At the time when Mrs. Boutwell took her deed, she had actual notice of the lease, and that the plaintiff claimed ownership in the ice-houses, with the right to remove them.

Handforth did not contend that he could not have removed the ice-houses at any time between December 3, 1886, and June 10, 1887, and at no time during the trial sought or contended that he had the right to recover damages, as such, for a

breach of any part of Jackson's agreement, but sought only to recover the value of the personal property which he had delivered to him under it, deducting the value of the tools and labor received.

The plaintiff asked the judge to rule that the contract set forth in the answer was illegal and void, and could not be set up in defence of his claim; the judge refused so to rule, and, upon the above facts, found for the defendant. If the ruling and finding were correct, judgment was to be entered for the defendant; otherwise, such judgment was to be entered as law and justice might require.

*A. De Wolf,* for the plaintiff.

*S. T. Field & D. Malone,* for the defendant.

C. ALLEN, J. At the trial, the plaintiff contended that the defendant's agreement to withdraw from the ice business in Greenfield was illegal and void, but he does not insist upon that in this court. The limitation of space saves the agreement from being in illegal restraint of trade. See *Bishop* v. *Palmer,* 146 Mass. 469, and cases there cited. But the plaintiff's main contention before us is, that the ice-houses were real estate, and so did not pass to him; and that the defendant by his deed to Mrs. Boutwell conveyed the title to her, and thus cut off the plaintiff's title to them, and that therefore the defendant should be held to have rescinded his agreement with the plaintiff, and that upon such rescission the plaintiff may recover the value of the property delivered by him to the defendant, less the value of what he received from the defendant.

The grounds upon which the decision in the Superior Court rested are not stated in the report, but the facts, which are stated in detail, not only warrant a finding, but we think sufficiently show, that the ice-houses were personal property, and that the title to them passed to the plaintiff. The first ice-house was built by the defendant while he was a lessee of the land upon which it stood. The next three were built by him after he and Bardwell became owners of the land, with the consent of Bardwell, who acknowledged that they belonged to the defendant as his individual property, with the right to remove them. Under this state of things, the plaintiff and the defendant entered into the agreement of December 3, 1886, by

which the ice-houses were to become the property of the plaintiff. On the same day, the defendant and Bardwell executed the lease of the land to the plaintiff, in which they in express terms declared the ice-houses to be the property of the plaintiff, and agreed that he might remove them at or before the expiration of the lease; and the plaintiff thereupon entered into possession of them. There was thus at all times a distinct understanding on the part of the owners of the land that the ice-houses should be and remain personal property; and this was sufficient to make them such. *Howard* v. *Fessenden*, 14 Allen, 124, 128, 129. *Korbe* v. *Barbour*, 130 Mass. 255. Mrs. Boutwell took her title with knowledge of the lease to the plaintiff, and thus must be held to have known that he was the owner of the ice-houses, and she took no title to them.

It thus appears, upon the facts stated in the report, that the plaintiff has had all that he bargained for from the defendant, except two days' work with a double team; and this work he has never asked the defendant to perform. He had the ice tools, the ice-houses, the good will of the defendant's business without interference from the defendant, and three days' labor with a double team. Now the plaintiff seeks to recover from the defendant, not damages for a breach of the agreement on the part of the defendant, (though the original declaration would seem to have been framed in that aspect, and thus to affirm the agreement,) but the value of the property delivered by the plaintiff to the defendant after deducting the value of the tools and labor received, making no allowance for the ice-houses, and saying nothing about the value of the good will of the business. There are several sufficient answers to this. In the first place, it does not appear that the defendant has in any respect failed to keep his part of the agreement, he never having been asked to perform the two remaining days' labor with a double team. In the second place, the plaintiff has not put, nor attempted nor offered to put, the defendant in the same position in which he stood at the outset, as he must do before he can recover back the consideration paid by him, as upon a rescission. The defendant would be entitled to have his property restored to him, not to have its value fixed by a jury. *Coolidge* v. *Brigham*, 1 Met. 547. *Morse* v. *Brackett*, 98 Mass. 205. *Bal-*

*lou* v. *Billings*, 136 Mass. 307.   Finally, the plaintiff has had the benefit of the good will of the defendant's business, which cannot now be restored.   *Bassett* v. *Percival*, 5 Allen, 345.

*Judgment for the defendant.*