## 25709. ADAMS v. CHAMBERLIN.

DECIDED OCTOBER 30, 1936.

Roy S. Drennan, Roland Neeson, for plaintiff.

Hooper & Hooper, for defendant.

GUERRY, J. Mrs. J. C. Adams brought an action in trover against Mrs. Ida Chamberlin, to recover "one outbuilding, one 3-room building, one kitchen and storeroom garage, and one building approximately 20x50 feet, all of said buildings being situated on or upon the real estate now or formerly owned by the defendant, and which is described in [a certain deed], and all of which buildings are portable and removable buildings, not attaching to or becoming a part of the realty, and all of which buildings were erected and placed on said property by the predecessor in title to plaintiff while the land and real estate was owned by C. H. Collins, the predecessor in title to the defendant, under a specific agreement that the same was to remain personal property and fixtures and be removable, and the defendant, Mrs. Ida Chamberlin, acquired the title to the property with actual notice thereof, subject to the rights of the plaintiff and her predecessor in title to said buildings of the value of $1000, and to which petitioner claims title." A general demurrer setting out that the above-described buildings constituted realty and not personalty, and could not therefore be the basis of a trover action, was sustained and the suit was dismissed. The plaintiff excepted to that order.

In Woods v. McCall, 67 Ga. 506, the defendant removed a cotton-screw which was attached to the realty of the plaintiff, and affixed it to his own realty. The plaintiff brought trover, and recovered. Upon appeal the Supreme Court said: "Two questions are made in this record and insisted on here. The first is that trover can not be brought to recover a cotton-screw, because it is a permanent fixture. But the reply is that the defendant had detached it from the plaintiff's realty and moved and affixed it to his own. When

he detached it, it became that thing for which trover would lie, and the conversion was complete at that moment and the right of action then arose, and this right could not be defeated by the defendant's fastening this chattel to his own real estate." See, in this connection, *Camp* v. *Horton*, 131 *Ga.* 793, 798 (63 S. E. 351); *Kennedy* v. *Smith*, 149 *Ga.* 61 (99 S. E. 27). Under the Code, § 85-201, "Realty or real estate includes all lands and the buildings thereon, and all things permanently attached to either, or any interest therein or issuing out of or dependent thereon." Buildings are therefore a part of the realty and title thereto is in the owner of the land. "A tenant during the term or a continuation thereof, or while he is in possession under the landlord, may remove trade fixtures erected by him." § 61-110. While a tenant has no right to remove permanent fixtures (§ 61-109), yet he may by agreement reserve the right to remove such permanent fixtures. However, we do not think it follows that the right to remove places title to permanent buildings erected on land in him so that an action of trover will lie to compel the delivery of the building after he ceases to be a tenant and surrenders possession of the premises. A suit for specific performance of his contract or an action for damages for refusal to allow him to move the building is preserved to him under a valid contract. A piece of machinery or article used about a business or house may be attached to the realty, as a syrup-kettle or cane-mill (*Brigham* v. *Overstreet*, 128 *Ga.* 447, 57 S. E. 484, 10 L. R. A. (N. S.) 452, 11 Ann. Cas. 75), or a furnace (*Lasch* v. *Columbus Heating & Ventilating Co.*, 45 *Ga. App.* 200, 164 S. E. 211), and yet not so lose its identity that title might not be retained thereto and an action of trover brought therefor. Such articles are not fixed by our Code as parts of the realty as are buildings. "'Whether an article of personalty connected with or attached to realty becomes a part of the realty, and therefore such a fixture that it can not be removed therefrom, depends on the circumstances,' and the doubt is to be settled by the jury." *Pendley Brick Co.* v. *Hardwick*, 6 *Ga. App.* 114 (64 S. E. 664). A building is a part of the realty by statute law of this State, and trover will not lie to recover such building before it has become personalty by being detached from the land. The court did not err in sustaining the demurrer.

*Judgment affirmed. Broyles, C. J., concurs.*

MacIntyre, J., dissenting. The trover petition alleges: "The defendant is in possession of the following additional described personal property, to wit: 1 out-building, 1 3-room building, 1 kitchen and storeroom garage, and 1 building approximately 20 x 50 feet. All of said buildings being situated on or upon the real estate now or formerly owned by the defendant, and which is described in a deed executed by C. H. Collins to the defendant, and recorded in deed book 1391, p. 285, Fulton County records, and all of which buildings are portable and removable buildings, not attaching to or becoming a part of the realty, and all of which buildings were erected and placed on said property by the predecessor in title to plaintiff while the land and real estate was owned by C. H. Collins, the predecessor in title to the defendant, under a specific agreement the same was to remain personal property and fixtures and be removable; and the defendant, Mrs. Ida Chamberlin, acquired the title to the property with actual notice thereof, subject to the rights of the plaintiff and her predecessor in title to said buildings."

"The buildings ordinarily are a part of the realty." Bronson on Fixtures, 254, § 50. See Code, § 85-201. The right to remove the annexed buildings may be reserved in the instrument conveying title to the realty, or written agreement extrinsic or collateral. *Wolff* v. *Sampson, 123 Ga.* 400, 403 (51 S. E. 335); Bronson on Fixtures, 139. § 28 (9). The general rule of the common law was that articles attached to realty became a part thereof; but trade fixtures and domestic fixtures which were placed on the property by the tenant were exceptions to the general rule. *Wolff* v. *Sampson,* supra. The petition in the instant case does not seem to be proceeding on the idea that the houses came within the exceptions just stated, but seems to be proceeding on the theory of the specific agreement that the buildings would not become a part of the realty when built on the land of C. H. Collins, the defendant's predecessor in title. As between grantor and grantee, "'The grantor, before the conveyance of his freehold, is the owner of all his fixtures [used in the sense that it applies to those annexed articles which are so attached to the realty as to become a part thereof], as well as the realty to which they are attached. He knows what the law is, it is in his power to make his fixtures personalty before the sale of the premises, either by a

severance or by an agreement in the instrument of conveyance duly reserving them to himself."" *Wolff* v. *Sampson,* supra. There seems to be a difference, in the rule in reference to fixtures, between a landlord and a tenant, and a grantor and a grantee in a deed which conveys title. The law is less favorable to the grantor in the deed than to the landlord, and, conversely, more favorable to the grantee than the tenant. Conner *v.* Coffin, 22 N. H. 538. For chattels that are a part of the realty can not be excepted from the operation of a deed conveying the land by a parol agreement. *Smith* v. *Odom, 63 Ga.* 499; Bond *v.* Coke, 71 N. C. 97; Noble *v.* Bosworth, 19 Pick. (Mass.) 314; Detroit &c. R. Co. *v.* Forbes, 30 Mich. 165. An agreement is effective, as between the parties, to prevent a building from becoming real property when built by one on the land of another. Binkley *v.* Forkner, 117 Ind. 176 (19 N. E. 753, 3 L. R. A. 33); Harmon *v.* Kline, 52 Ark. 251 (12 S. W. 496); Myrick *v.* Bill, 3 Dak. 284 (17 N. W. 268); Curtiss *v.* Hoyt, 19 Conn. 154 (48 Am. D. 149); Tapley *v.* Smith, 18 Me. 12; Doty *v.* Gorham, 5 Pick. (Mass.) 487 (16 Am. D. 417); Handforth *v.* Jackson, 150 Mass. 149 (22 N. E. 634); Priestley *v.* Johnson, 67 Mo. 632; Lowenberg *v.* Bernd, 47 Mo. 297; Goodman *v.* Hannibal &c. R. Co., 45 Mo. 33 (100 Am. D. 336); Ford *v.* Burleigh, 62 N. H. 388; Laird *v.* Railroad, 62 N. H. 254 (13 Am. St. R. 564); Dame *v.* Dame, 38 N. H. 429 (75 Am. D. 195); Mayo *v.* Newhoff, 47 N. J. Eq. 31 (19 Atl. 837); Pope *v.* Shinkle, 45 N. J. Law, 39; Smith *v.* Benson, 1 Hill (N. Y.) 176; Freeman *v.* Leonard, 99 N. C. 274 (6 S. E. 259); Osgood *v.* Howard, 6 Me. 452 (20 Am. D. 322); Foster *v.* Mabe, 4 Ala. 402 (37 Am. D. 749); Keefe *v.* Furlong, 96 Wis. 219 (70 N. W. 1110).

"The authorities are in unison to the effect that such an agreement will prevail as against a subsequent purchaser or mortgagee of the realty who has notice, actual or constructive, of the agreement." 26 C. J. 681, § 46. "In accordance with the general principle of law that parties may determine, between themselves, the legal effect of any transaction by an express agreement, it is well settled in the law of fixtures that parties may fix by agreement, duly expressed, the character of a chattel in accordance with their desires, so that that which the law might ordinarily regard as realty may be treated, as between themselves, as per-

sonalty, and vice versa, and the courts will execute these agreements if duly made. Thus, the general rules applicable to fixtures may be completely set aside and superseded by the agreement of the parties in determining the character of articles annexed. This general proposition, however, is subject to certain restrictions and modifications; for, as Denio, J., says: 'It is conceded that there must necessarily be a limitation to this doctrine, which will exclude from its influence cases where the subject or mode of annexation is such that the attributes of personal property can not be predicated of the thing in controversy. Thus, a house or other building, which, from its size, or the materials of which it was constructed, or the manner in which it was fixed to the land, could not be removed without practically destroying it, would not, I conceive, become a mere chattel by means of any agreement which could be made concerning it. So, of the separate materials of a building, and things fixed into the wall, so as to be essential to its support, it is impossible that they should by any arrangement between the owners become chattels. . . It will readily be conceded that the ordinary distinction between real estate and chattels exists in the nature of the subject, and can not, in general, be changed by the convention of the parties. Thus, it would not be competent for parties to create a personal chattel interest in a part of the separate bricks, beams, or other materials of which the walls of a house were composed.' And so, apparently, parties can not fix the character of an article which is so annexed to the freehold as to be not removable without causing serious injury to the freehold, or without the destruction of the article itself. Likewise, the agreement must bear the ordinary tests of a legal contract." Bronson on Fixtures, 133-138. "Fixtures may be constructively severed; that is, there may exist a severance in law of articles annexed without a severance in fact; for parties may, by special agreement, determine the character of a fixture which would otherwise be a part of the realty, as personalty, even without an actual severance. In such cases, the question primarily is one of the intention of the parties." Bronson on Fixtures, 119, § 23. In applying this rule "the buildings are not classed with forest trees, but with growing crops, nursery trees and fixtures attached to the realty." Long v. White, 42 Ohio St. 59, 61. And thus, in the present case, if the agreement set out in the petition

is *in writing,* the written agreement would be evidence of constructive severance, and there may be a conversion authorizing an action in trover, even though there is no actual severance and asportation. 65 C. J. 25. And so the articles are personalty for the purpose of the form of action to be brought for their recovery. 26 C. J. 677.

And it being the rule that the demurrer admits that the facts alleged in the petition can be legally proved unless 'the contrary appears on the face of it (*Story* v. *Flournoy,* 55 *Ga.* 56, 66), it is sufficient on demurrer to allege that the contract was made. Such an allegation is to be understood as intending a real contract—something which the law would recognize as such. The existence of the writing is a matter of evidence; it is not one of pleadable facts. Applying the well-established principles to the facts of this case, I think that the court erred in sustaining the demurrer; for the agreement, if as alleged (and in writing), would be effective, as between the parties, to prevent the buildings of the kind alleged from becoming real property when built by one on the property of another.