## A91A0878. GRANT v. NEWSOME et al.
### (411 SE2d 796)

BEASLEY, Judge.

Grant, a state prisoner, instituted the present action against the wardens of two prisons in which he has been incarcerated, as well as the Deputy Commissioner of the Department of Corrections. The court granted summary judgment to defendants and denied plaintiff's motion for summary judgment. The undisputed facts are as follows.

The counterclaimant in a federal suit obtained a $1,000 judgment against Grant. By letter accompanied by an uncertified copy of the judgment, the attorney representing that counterclaimant requested the warden of the prison in which Grant was held to freeze his inmate account and to advise of the procedure for obtaining the funds to pay the judgment. The warden froze the account and notified Grant that this had been done.

Grant complained in an inmate grievance filed pursuant to Board of Corrections Rule 125-2-4-.23 and internal prison rules. When he was transferred to another prison, his inmate account remained frozen, so Grant filed another inmate grievance against the warden of this prison. Each warden denied the relief sought. Grant appealed each denial to the deputy commissioner, who upheld the denial of the first grievance approximately 15 months after the appeal was taken and upheld the denial of the second grievance approximately nine months after that appeal was taken. Grant's account remained frozen for approximately one year and five months.

After the lifting of the freeze (for undisclosed reasons), Grant instituted this action, which he asserts is a state tort claim under OCGA § 51-10-1. He also complains that his rights to due process and equal protection have been violated under the federal and state constitutions, (Art. I, Sec. I, Pars. I and II of the Ga. Const. of 1983). No development of a claim under the state constitution is made, but the federal claim is couched as one for relief under 42 USC § 1983.

1. We first consider the state tort claim. OCGA § 51-10-1 provides: "The owner of personalty is entitled to its possession. Any deprivation of such possession is a tort for which an action lies."

This statute embodies the common law action of trover and conversion. See *Youngblood v. Duncan*, 49 Ga. App. 300 (175 SE 411) (1934); *Bromley v. Bromley*, 106 Ga. App. 606 (127 SE2d 836) (1962). It authorizes the recovery of damages where a government official, without lawful authority, has temporarily deprived an individual of his or her property. *Norred v. Dispain*, 119 Ga. App. 29 (166 SE2d 38) (1969); *Vaughn v. Glenn*, 44 Ga. App. 426 (161 SE 672) (1931). There can be a conversion of specific money as well as chattels. *Carter v. Hornsby*, 68 Ga. App. 424 (23 SE2d 95) (1942).

A plaintiff in an action for conversion of specific money may re-

cover lost interest. *Beaver v. Magid*, 56 Ga. App. 272 (1) (192 SE 497) (1937); OCGA § 44-12-151 (2). Punitive damages are also recoverable. *Sisk v. Carney*, 121 Ga. App. 560, 564 (5) (174 SE2d 456) (1970). By the same reasoning as applied in *Sisk*, consequential damages, which are generally recoverable in tort actions under OCGA § 51-12-3 (b), can also be recovered in a conversion action. Thus, a cognizable claim was presented.

Under Federal Rule of Civil Procedure 69 (a), execution of a money judgment rendered by a federal district court is to be made in accordance with the practice and procedure of the State in which the district court sits. OCGA § 9-11-69 provides in pertinent part: "Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise."

A writ of execution upon a money judgment has been defined as formal process issued by a court authorizing the sheriff or other competent officer to seize and sell so much of the judgment debtor's nonexempt property as is necessary to satisfy the judgment. Black's Law Dictionary, p. 568 (6th ed. 1990). "A fi. fa. is an execution and an execution is 'a writ issued to a sheriff, constable, or a marshal authorizing and requiring him to execute a judgment of the court.' Black's Law Dictionary, 4th ed. p. 677." *Oxford v. Generator Exchange*, 99 Ga. App. 290, 293 (108 SE2d 174) (1959). According to the fifth edition, it is "[a] writ of execution commanding the sheriff to levy and make the amount of a judgment from the goods and chattels of the judgment debtor."

Another method of enforcing a money judgment is through postjudgment garnishment proceedings. OCGA § 18-4-60 et seq. In *Gaston v. Jackson Nat. Bank*, 45 Ga. App. 106 (2) (163 SE 265) (1932), this Court, distinguishing *Connolly v. Thurber*, 92 Ga. 651 (1) (18 SE 1004) (1893), held that money belonging to an inmate and placed for safekeeping in the possession of the warden is not exempt from the process of garnishment.

OCGA §§ 18-4-40 through 18-4-48 establish procedures for garnishing debts owed by the garnishee to the judgment debtor, OCGA § 18-4-20 (b), as well as property, money, or effects of the debtor in the possession or control of the garnishee. OCGA § 18-4-20 (c).

None of these procedures was followed in this case, and we find no authority for the defendants to freeze the account. OCGA § 17-14-13, authorizing the seizure of money from a prisoner's inmate account for payment of court-ordered restitution as a result of damage to state property by the inmate, and OCGA § 9-10-14 (c), authorizing prison officials to remit money from an inmate account in order to pay court costs in an action by the inmate against a state or local governmental agency or officer, are not applicable here. It necessarily follows that Grant was tortiously denied the use and possession of his

property.

Summary judgment therefore was improperly granted to defendants on the tort claim, and the trial court erred in denying Grant's motion for summary judgment as to liability but not as to damages, which are unliquidated.

2. Grant does not have a Section 1983 claim, however. "[T]he initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived [plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U. S. 527, 535 (101 SC 1908, 68 LE2d 420) (1981). In conducting our inquiry, the analysis given in *Parratt* is applied.

As in *Parratt*, there is little question that defendants were acting under color of state law when they froze and held his inmate account upon receipt of the letter from the judgment creditor's attorney and when they refused relief in the two grievance procedures. Plaintiff was in their custody, or at least, as to some, his money was in their control, and they were acting pursuant to their official capacities as employees of the state corrections department.[1]

The harder question is whether a federal constitutional deprivation is involved. Plaintiff asserts but makes no showing that tenets of equal protection are brought into place. See *Terrell v. Shope*, 687 FSupp. 579, 581 (3) (N.D. Ga. 1988). Respecting the Due Process Clause of the Fourteenth Amendment simpliciter, there is, similar to *Parratt*, supra at 536, satisfaction of the three prerequisites of a valid due process claim: The defendants "acted under color of state law"; the money "falls within the definition of property"; and the alleged loss, here deliberately rather than negligently caused as in *Parratt*, "amounted to a deprivation." This does not end the inquiry, however, because these three elements do not establish a violation of the Fourteenth Amendment, which forbids deprivations "without due process of law." *Parratt*, supra at 537, citing *Baker v. McCollan*, 443 U. S. 137, 145 (99 SC 2689, 61 LE2d 433) (1979).

What must be examined is "whether the tort remedies which the State . . . provides as a means of redress for property deprivations satisfy the requirements of procedural due process." *Parratt*, supra at 537. In this case the post-taking grievance procedures afforded by the corrections department did not suffice. But there is an adequate state remedy to redress plaintiff's property damage, by way of OCGA §§

---

[1] This is confirmed by the state attorney general's representation of them in this case throughout.

51-10-1 and 9-11-69. The latter governs the process for enforcement of a judgment; the former is actually invoked by plaintiff currently and authorizes a suit for wrongful deprivation of possession, which would occur if money is held for a judgment, outside of lawful procedure.

The Eleventh Circuit has recognized that OCGA § 51-10-1 provides an adequate post-deprivation remedy for seizure and retention of personal property without due process of law. *Byrd v. Stewart*, 811 F2d 554, 555 (n. 1) (11th Cir. 1987).

As in *Parratt*, the alleged deprivation here "did not occur as the result of some established state procedure." *Parratt*, supra at 543. Instead, it occurred in *derogation* of such procedure, as shown in Division 1. Nor is the nature of plaintiff's federal claim one that involves *substantive* due process, as did the claim in *Gilmer v. City of Atlanta*, 774 F2d 1495 (11th Cir. 1985) (en banc) cert. den., 476 U. S. 1115 (106 SC 1979, 90 LE2d 654) (1986). See also *Terrell*, supra.

Summary judgment was proper on the federal claim.

*Judgment affirmed in part and reversed in part. Carley, P. J., and Judge Arnold Shulman concur.*

DECIDED NOVEMBER 1, 1991.

Eugene Grant, Jr., *pro se.*

Michael J. Bowers, *Attorney General,* Daryl A. Robinson, *Senior Assistant Attorney General,* Terry L. Long, *Assistant Attorney General,* for appellees.