A08A1731. LEVENSON v. WORD et al.
(668 SE2d 763)

ELLINGTON, Judge.

Louis Levenson, as the administrator of the estate of Jerry Eugene Post, brought a complaint for damages seeking to recover $125,000 from the law firm of Word & Simmons, P.C., and from its principals Gerald Word and Maryellen Simmons, under a theory of conversion.[1] Levenson averred that the firm was not entitled to legal fees paid to it from the estate by Post's wife, Debra, who later pleaded guilty to murdering her husband, under the theory that a "thief" and a "slayer" cannot pass title to property, including money, and that Word and Simmons either knew or should have known that Debra lacked title when they accepted a retainer from her. The State Court of Carroll County granted the firm's motion for summary judgment, finding that Word & Simmons earned its fees and accepted payment for its services in good faith. It is from this order that Levenson appeals. Finding no error, we affirm.

1. On appeal from a grant of a motion for summary judgment, we review the evidence de novo, viewing it in the light most favorable to the nonmovant, to determine whether a genuine issue of fact remains and whether the moving party is entitled to judgment as a

---

[8] See *Schwartz v. Harris Waste Mgmt. Group*, 237 Ga. App. 656, 661 (2) (516 SE2d 371) (1999).

[1] In his appellate brief, Levenson withdrew his claim for money had and received "due to jurisdictional issues." Although an action for money had and received is governed by OCGA § 13-1-13, our appellate courts have construed this section and its predecessors, and have interpreted the action itself, in conjunction with codified equitable principles. See *Gulf Life Ins. Co. v. Folsom*, 256 Ga. 400 (349 SE2d 368) (1986) (discussing the interplay between OCGA §§ 13-1-13, 23-2-29, and 23-2-32). As this case was brought in state court, and as equity jurisdiction is "vested in the superior courts," OCGA § 23-1-1, Levenson conceded that the state court could decide only his claims at law.

matter of law. *Rubin v. Cello Corp.*, 235 Ga. App. 250 (510 SE2d 541) (1998). "A grant of summary judgment must be affirmed if right for any reason, whether stated or unstated. It is the grant itself that is to be reviewed for error, and not the analysis employed." (Citations omitted.) *Albany Oil Mill v. Sumter Elec. Membership Corp.*, 212 Ga. App. 242, 243 (3) (441 SE2d 524) (1994).

So viewed, the record reveals the following relevant facts. Jerry Eugene Post was murdered on October 25, 2001. On January 25, 2002, the probate court issued letters testamentary appointing Debra Post executrix of her husband's estate. The grand jury indicted Debra for murdering her husband on September 27, 2002. Shortly thereafter, Debra hired the law firm of Rader & Cooke, P.C., to represent her. After the State announced it would seek the death penalty, Rader & Cooke associated Word & Simmons because Gerald Word and Maryellen Simmons were "death penalty qualified."

On October 4, 2002, Debra signed a retainer agreement which was drafted by Rader & Cooke, signed by its principals, and signed by Word and Simmons on behalf of their firm. The agreement provided that Debra would pay a nonrefundable retainer of $150,000 and a refundable retainer of $100,000, and that these funds would be divided between the firms. Debra further agreed to pay the firm "all of [her] liquid assets, presently estimated to be approximately $100,000[,] and to deed to this Firm all of [her] interest in the real property[2] located in Douglas County, Georgia to be held or liquidated at the Firm's discretion to fund" its retainers.

When Word and Simmons signed the agreement to represent Debra, she had already received the life insurance proceeds and had already conveyed the real property at issue to Rader & Cooke. Neither Word & Simmons nor its principals had any role in transferring Debra's interest in the real property described in the agreement to Rader & Cooke, nor did the principals participate in the later sale of the property[3] or know about or question the specific source of Debra's funds. Rader & Cooke paid Word & Simmons a total of $125,000 to represent Debra. Word & Simmons received its retainer funds in the form of checks drawn on Rader & Cooke's accounts.[4] Finally, Debra, who had continuously maintained her innocence, pleaded guilty to murdering her husband on September 13, 2003,

---

[2] To the extent Levenson seeks the recovery of real property, that claim must fail. An action for conversion and trover will not lie to recover real property. *Adams v. Chamberlin*, 54 Ga. App. 459, 460 (188 SE 550) (1936).

[3] Rader & Cooke, P.C., sold the property to third parties for $260,000 on March 13, 2003.

[4] Neither copies of these checks nor the escrow account records of Rader & Cooke or Word & Simmons are included in the record.

shortly after the prosecution produced incriminating evidence of her involvement in the crime.

Levenson contends the trial court erred in granting summary judgment to Word & Simmons and that the estate of Jerry Post is entitled to the $125,000 Rader & Cooke paid to Word & Simmons because (1) Post, as a thief and slayer, did not have title to the money she paid her attorneys and because (2) a jury question remains as to whether Word & Simmons acted in "good faith" in receiving those funds.

OCGA § 51-10-1 provides that "[t]he owner of personalty is entitled to its possession. Any deprivation of such possession is a tort for which an action lies." This statute "embodies the common law action of trover and conversion." (Citations omitted.) *Grant v. Newsome*, 201 Ga. App. 710 (1) (411 SE2d 796) (1991). As the Supreme Court of Georgia has explained:

> Conversion consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation. . . . [I]n order to be chargeable with conversion, technically it is not necessary that the defendant assert any right of ownership over the property; it is sufficient if the defendant wrongfully assumes dominion over the property inconsistent with the owner's right. . . . It is immaterial that such dominion was exercised in good faith, for [w]hoever meddles with another's property, whether as principal or agent, does so at his peril, and it makes no difference that in doing so he acts in good faith.

(Citations and punctuation omitted.) *Maryland Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 261 (1) (356 SE2d 877) (1987).

First, pretermitting whether the funds at issue were sufficiently identified[5] to be recovered under a theory of conversion, Levenson has failed to show that the money paid to Word & Simmons belonged

---

[5] Although OCGA § 51-10-1 refers only to personalty, "[t]here can be a conversion of specific money as well as chattels." (Citation omitted.) *Grant v. Newsome*, 201 Ga. App. at 710-711 (1). Money, however, is often considered fungible intangible personal property because it cannot be differentiated by specific identification in a particular fund. *Taylor v. Powertel, Inc.*, 250 Ga. App. 356, 359 (2) (551 SE2d 765) (2001). Therefore, unless the plaintiff shows that the money converted comprises a specific and identifiable fund, a claim of conversion for a sum of money cannot be sustained. *Decatur Auto Center v. Wachovia Bank*, 276 Ga. 817, 819-820 (583 SE2d 6) (2003); *Taylor v. Powertel*, 250 Ga. App. at 359 (2). "Mingling of the funds in a mixed bank account does not destroy their identity so as to prevent their recovery in an action for conversion as long as the funds or a portion thereof can be traced." (Citations

to the estate and not to Debra at the time it was paid. There is no evidence in the record, such as an accounting, establishing the extent of Debra's net worth or distinguishing her assets from those of her husband. Levenson has asked the finder of fact to assume, without any evidence, that Debra had no money of her own from which to pay her legal fees and expenses.

Second, even if Debra's assets could only have come into her possession upon her husband's death, there is no evidence in the record establishing that she lacked ownership or title to the money in her possession at the time she paid her attorneys. Levenson relies on OCGA § 53-1-5 in support of his argument that Debra lacked title to the funds she paid to her attorneys. That statute provides, in relevant part:

> (a) An individual who feloniously and intentionally kills or conspires to kill or procures the killing of another individual forfeits the right to take an interest from the decedent's estate and to serve as a personal representative or trustee of the decedent's estate or any trust created by the decedent.
> . . .
>
> (d) A final judgment of conviction or a guilty plea for murder, felony murder, or voluntary manslaughter is conclusive in civil proceedings under this Code section. In the absence of such a conviction or plea, the felonious and intentional killing must be established by clear and convincing evidence.[6]

Debra's guilt pursuant to this Code section, however, was not conclusively established until September 2003 when she pleaded guilty and a judgment of conviction was entered. Further, no one proved by clear and convincing evidence prior to that time that Debra had intentionally and feloniously killed her husband. Thus, because Debra's interest in the decedent's estate had not been forfeited at the time she paid the retainers, Debra had title and ownership of the funds paid to her attorneys. Levenson has not produced any authority demonstrating that the legislature intended the forfeiture provision of OCGA § 53-1-5 (a) to extend to creditors

---

omitted.) *Adler v. Hertling,* 215 Ga. App. 769, 774 (3) (451 SE2d 91) (1994).

[6] The Insurance Code provides a similarly high standard for determining when a beneficiary under an insurance policy must forfeit insurance proceeds for killing the insured: "A plea of guilty or a judicial finding of guilt not reversed or otherwise set aside as to any of such crimes shall be prima-facie evidence of guilt in determining rights under this Code section." OCGA § 33-25-13.

who had received payments from the slayer before the slayer had been adjudicated guilty or legally responsible pursuant to OCGA § 53-1-5 (d). Consequently, Word & Simmons' exercise of dominion over the funds paid to it for legal services by Debra was not wrongful and did not constitute conversion of the assets of the estate. See *Kline v. Atlanta Gas Light Co.*, 246 Ga. App. 172, 173 (538 SE2d 93) (2000). Because Levenson could not prove the essential elements of the tort of conversion, the state court did not err in granting summary judgment to Word & Simmons.

2. Following oral argument, Word & Simmons filed a motion for permission to supplement their brief with additional authority. Although we granted the motion and considered the brief, we note that our opinion is not based upon the additional authority cited.

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED OCTOBER 17, 2008 — ▉▉▉▉▉▉

Louis Levenson, *pro se.*

*Jack F. Witcher, Kevin B. Buice, Rita D. Carroll, Daniel B. Greenfield*, for appellees.