A93A0815. SPARKMAN v. THE STATE.
A93A0818. DREWRY v. THE STATE.
(434 SE2d 564)

COOPER, Judge.

Appellants were convicted of 34 counts of commercial gambling and one count of violating the Georgia Racketeer Influenced & Corrupt Organizations Act (RICO). They appeal from the judgments of conviction and sentence and assert identical enumerations of error.

1. In their first enumeration of error, appellants contend the trial court erred in denying their motion for directed verdict because the evidence did not authorize a finding that they promoted or operated a "lottery" as that activity is defined under Georgia law.

This court previously considered appellants' contentions that their activities did not constitute a lottery in *Drewry v. State,* 201 Ga. App. 674 (1) (411 SE2d 898) (1991) wherein we reviewed the trial

court's denial of appellants' general demurrer to the commercial gambling counts on the ground that the activity with which they were charged, known as the "numbers game" or "bug," was not a "lottery" as defined by OCGA § 16-12-20 (4) and therefore did not constitute commercial gambling as defined in OCGA § 16-12-22 (a) (6). We concluded that the issue could not be determined without considering evidence outside the indictment; that the indictment sufficiently alleged a lottery; and that whether in fact there was a lottery would have to be determined at trial. See *Drewry*, supra at 675.

"Lottery" is defined by OCGA § 16-12-20 (4) as "any scheme or procedure whereby one or more prizes are distributed by chance among persons who have paid or promised consideration for a chance to win such prize, whether such scheme or procedure is called a pool, lottery, raffle, gift, gift enterprise, sale, policy game, or by some other name." Appellants contend that the "essence of a lottery as defined by Georgia law is the distribution of one or more prizes among persons who have paid or promised a consideration for a chance to win such a prize. It contemplates a pool of prizes or money to be distributed among the players." Appellants argue that the State's proof was insufficient because the alleged gambling activity described by witnesses at trial did not include a pool from which prizes were distributed. However, there is no such requirement in the lottery statute, and appellants cite to none.

It is well established that the three ingredients necessary to constitute a lottery are prize, chance, and consideration. *Boyd v. Piggly Wiggly Southern*, 115 Ga. App. 628, 633 (155 SE2d 630) (1967). With respect to the commercial gambling counts the indictment charged that appellants "did unlawfully and intentionally promote, encourage and assist a lottery based upon wagers and bets placed on a three-digit number with the winning combination of numbers derived from selected digits within the total stocks and bonds closing figure of the New York Stock Exchange . . . , receive and record bets and offers to bet and did knowingly possess for transfer and transfer tickets papers, and other devices to serve as evidence of participation in such lottery, the three digit number and the date on which it was selected being material averments as to this incident of racketeering activity." At trial, the State's expert characterized appellants' operation as a "three-digit lottery" which accepted bets in three-digit combinations with the winning bets being derived from the Wall Street Journal and the Illinois State Lottery. The expert testified that in the event of a "hit," a winning bet, the amount a winner was paid depended on an elaborate calculation based on the number of bets placed on the winning number. He testified extensively about how such lotteries are structured, the paraphernalia used to operate such enterprises, and the evidence, i.e., "bug tickets," cash, "hit sheets" and copies of the

Wall Street Journal, seized incident to appellants' arrests and pursuant to a search warrant of an apartment from which the lottery was operated and the relevance of that evidence to the appellants' operation. In addition, while under police surveillance, Sparkman was observed participating in what the police described as several "drops," in which packages containing suspected lottery tickets or cash were delivered to him. In a search of Sparkman's car, the police discovered a receipt book with three-digit numbers written on it and loose tickets containing three-digit numbers of the sort used in three-digit lotteries. The evidence also revealed that Drewry's role in the operation was the delivery of the payoff money to individuals who wrote the bets who would then pay the winners in the event of a "hit." Drewry was also observed participating in a "drop." Upon his arrest, a search of his car revealed a bag of envelopes containing "bug tickets," cash and a collection of Wall Street Journal newspapers.

One who "[r]eceives, records, or forwards a bet or offer to bet" or "[s]ets up or promotes any lottery, sells or offers to sell, or knowingly possesses for transfer or transfers any card, stub, ticket, check, or other device designed to serve as evidence of participation in any lottery" commits the offense of commercial gambling. OCGA § 16-12-22 (a) (2) and (6). In our view, the evidence amply demonstrated the operation of a lottery and thus was sufficient evidence to enable a rational trier of fact to find appellants guilty of commercial gambling beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellants also contend the trial court erred in refusing to charge the jury that even if they found appellants engaged in illegal acts, there could be no conviction unless those acts were a lottery. This enumeration is without merit. Not only was there sufficient evidence from which the jury could find appellants guilty of operating a lottery under Georgia law but even if the evidence had not been such, convictions could also have been returned by the jury on the alternative allegation of commercial gambling alleged in the indictment — that appellants did unlawfully and intentionally "receive and record bets and offers to bet and did knowingly possess for transfer and transfer tickets, papers, and other devices to serve as evidence of participation in such lottery. . . ." Thus, the requested charge was not properly adjusted to the facts in this case. " ' "If any portion of the request is inapt, incorrect, or not authorized by the evidence, denial of the request is proper." ' [Cit.]" *Clayton v. State*, 203 Ga. App. 843, 846 (5) (418 SE2d 610) (1992).

3. In their third enumeration of error, appellants contend the trial court erred in failing to charge the jury that the taking of bets which involved a specific payoff rather than a distribution of prizes is not a lottery. We previously rejected this contention of appellants in

their first enumeration of error. Appellants cite OCGA § 16-12-20 as authority for this charge; however, that statute contains no such provision, nor have any decisions defined lottery as urged by appellants. This enumeration is also without merit.

4. Finally, appellants contend the trial court erred in refusing to direct a verdict in favor of appellants as to the RICO count after the court directed a verdict for one of appellants' co-defendants who was alleged in the indictment to comprise the "enterprise." Appellants contend that the dismissal of the co-defendant resulted in a fatal variance between the allegata and the probata because the indictment specifically alleged that the co-defendant was one of five individuals who comprised the enterprise. Appellants also contend the court erred in refusing to charge the jury that before there could be a conviction under the RICO count, it must find that the enterprise consisted of each person alleged in the indictment to constitute the enterprise. We disagree.

" '[O]ur courts have departed from an overly technical application of the fatal variance rule, focusing instead on materiality. " 'The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to "affect the substantial rights" of the accused.' " [Cits.] . . . It is the underlying reasons for the rule which must be served: 1) the allegations must definitely inform the accused as to the charges against him so as to enable him to present his defense and not to be taken by surprise, and 2) the allegations must be adequate to protect the accused against another prosecution for the same offense.' [Cit.]" *Lawhorn v. State*, 200 Ga. App. 451, 453-454 (1) (408 SE2d 425) (1991). Count 1 of the indictment alleged that "[t]he enterprise was a group of individuals associated in fact, to wit: Joseph Drewry[,] Eugene Sparkman[,] Melissa Denise Harrison[,] John Frazier[,] and Judith Faye Thomas. . . ." "Enterprise" is defined by OCGA § 16-14-3 (6) as "any person, sole proprietorship, partnership, corporation, . . . or group of individuals associated in fact although not a legal entity." We conclude that the dismissal of Judith Faye Thomas did not result in a variance which affected appellants' substantial rights. Without Thomas as a co-defendant, the indictment still alleged the existence of an enterprise, that is a "group of individuals associated in fact," therefore, appellants were not subjected to the dangers of not being adequately informed of the charges against them so as to enable them to present defenses to the RICO charge or of being prosecuted again for the same offense. *De Palma v. State*, 225 Ga. 465, 469 (3) (169 SE2d 801) (1969).

*Judgments affirmed. McMurray, P. J., and Beasley, P. J., concur.*

Decided July 15, 1993 —
Reconsideration denied July 29, 1993 —

*Buafo & Gomez, Althea L. Buafo*, for appellant (case no. A93A0815).

*Groover & Childs, Denmark Groover, Jr., Frank H. Childs, Jr.*, for appellant (case no. A93A0818).

*Willis B. Sparks III, District Attorney, Vernon R. Beinke, Thomas J. Matthews, Assistant District Attorneys*, for appellee.