A93A1986. TALLEY v. MATHIS et al.
(441 SE2d 854)

ANDREWS, Judge.

Talley appeals the trial court's order granting appellees' motions to dismiss.

Talley filed his complaint on December 18, 1992, against Weyman and Ellen Mathis, Janet Wilson, and Denise Smith. The complaint alleged that in November or December 1991, Talley and Mathis, both residents of Floyd County, Georgia, entered into a contract whereby they would play the lotteries in Kentucky and Florida and equally divide any proceeds from winning.

Pursuant to this agreement, in February 1992, Mathis told Talley that it was time to purchase additional lottery tickets for the Kentucky lottery. Talley gave Mathis more money and Mathis told Talley that he would call his daughter, appellee Janet Wilson, who lived in Kentucky, and have her buy the tickets. On March 14, 1992, Talley left Rome, Georgia, to take a vacation. Also on March 14, 1992, the State of Kentucky Lottery Corporation held a lottery drawing and a ticket which had been purchased by Janet Wilson won the $6,000,000 lottery jackpot. When Talley returned to Rome on March 20, 1992, Mathis told him that a ticket purchased by Janet Wilson had won, but that the ticket was owned by Janet Wilson, her sister, appellee Denise Smith, and their mother, appellee Ellen Mathis.

Talley filed a multi-count complaint, which included claims of fraud, tortious interference with contract and conversion. Defendants filed motions to dismiss, which the superior court granted, and Talley appeals.

1. In his first enumeration of error, Talley claims that the trial court erred in dismissing the complaint, since at the time of the agreement in this case, Georgia public policy was not against a lottery. Talley argues that as of February 1992, when he paid the addi-

tional money, public policy was in favor of lotteries. Citing *Strickland v. Gulf Life Ins. Co.*, 240 Ga. 723, 729 (242 SE2d 148) (1978), Talley contends that Governor Miller's victory in the November 1990 election evidenced public support of a lottery.

This argument is without merit. Both at the inception of the subject agreement and in February 1992, all lotteries and the sale of lottery tickets were prohibited and violators were subject to prosecution. Ga. Const. 1983, Art. I, Sec. II, Par. VIII. Furthermore, during this time agreements or contracts concerning the purchase of lottery tickets were also illegal. See OCGA § 13-8-3; *Bloodworth v. Gay*, 213 Ga. 51 (96 SE2d 602) (1957); *Boyd v. Piggly Wiggly Southern*, 115 Ga. App. 628 (155 SE2d 630) (1967); *Kelly v. Banda*, 116 Ga. App. 421 (157 SE2d 782) (1967); *Thompson v. Ledbetter*, 74 Ga. App. 427 (39 SE2d 720) (1946); *Gulf Collateral v. Morgan*, 415 FSupp. 319 (S.D. Ga. 1976); OCGA § 16-12-22. See also *Sparkman v. State*, 209 Ga. App. 763 (434 SE2d 564) (1993).

The constitutional amendment which revised this paragraph was approved by a majority of the qualified voters voting at the general election on November 3, 1992. The new provision contained a general prohibition against lotteries, but specifically allowed for the operation and regulation of lotteries by or on behalf of the state.

Despite the 1992 constitutional change, we do not accept Talley's argument that Georgia public policy regarding the lotteries had changed as of February 1992. There was no specific provision for retroactivity of the enactment and we conclude that it was prospective only. *Donaldson v. Dept. of Transp.*, 262 Ga. 49, 53 (3) (414 SE2d 638) (1992). Moreover, although unnecessary to the resolution of this case since the amendment was not effective as of February 1992, we are inclined to disagree with Talley's argument that the amendment had a broader impact than that of specifically allowing a Georgia lottery.

Talley points to various newspaper articles which he claims support his argument. See *Dept. of Transp. v. Brooks*, 254 Ga. 303, 312, n. 9 (1) (328 SE2d 705) (1985). Despite these materials, we find that the constitution, case law, and statutes sufficiently evidence the public policy against lotteries as of February 1992. See generally *Porubiansky v. Emory Univ.*, 156 Ga. App. 602, 604 (275 SE2d 163) (1980). Accordingly, there was no error in the trial court's dismissal of the complaint, since the courts of this State will not lend their aid to helping Talley recover his alleged winnings. *Dennis v. Weaver*, 103 Ga. App. 824 (121 SE2d 190) (1961).

2. Secondly, Talley argues that although the agreement was made in Georgia, it was related to a gambling contract in Kentucky and was not itself a gambling contract. Citing *Martin v. Citizens Bank of Marshallville*, 177 Ga. 871 (171 SE 711) (1933), Talley claims that he

is seeking only to enforce his contract with Mathis. He argues that a gambling contract is one in which one party is certain to lose, and that he and Mathis were not gambling against each other.

Again, we disagree with Talley. The contract here was premised on gambling. The forwarding of money to bet on a lottery is defined under Georgia law as prohibited commercial gambling. See OCGA § 16-12-22 (a) (2), (6). As such, the contract was void. See generally OCGA § 13-8-3; *Kelly,* supra; *Bloodworth,* supra; *Gulf Collateral,* supra.

3. Finally, citing *Castilleja v. Camero,* 414 SW2d 424 (Tex. 1967) and *Kaszuba v. Zientara,* 506 NE2d 1 (Ind. 1987), Talley argues that there is no Georgia policy against betting in Kentucky and that the alleged conversion and fraud at issue here is a greater evil than lotteries. He argues that previous Georgia cases do not apply since they do not involve other states' legal lotteries and that the disposition of similar cases in other jurisdictions indicates that dismissal here was improper.

We disagree. Though the cases from other jurisdictions may be distinguishable in light of our proscriptive statute, we recognize that cases from other jurisdictions have reached differing results. See *State v. Fiola,* 576 A2d 338 (N.J. Super. 1990); compare *Pearsall v. Alexander,* 572 A2d 113 (D.C. App. 1990). For an overview of this area see "Enforceability of Contract to Share Winnings from Legal Lottery Ticket," 90 American Law Reports 4th 784 (1993).

Similarly, citing *Long v. Adams,* 175 Ga. App. 538 (333 SE2d 852) (1985), Talley argues that even if the parties' agreement was violative of the Georgia Criminal Code, he should be allowed to recover under a fraud and conversion theory. Appellees respond that the factual distinctions in the instant case warrant a different result. Appellees argue that because the dispute here was based upon contract principles, because the agreement was made in Georgia and because the subject matter of the contract was illegal, the agreement is unenforceable.

We agree with appellees. In *Long,* the plaintiff filed a tort action alleging the negligent and intentional infliction of harm. The analysis in *Long* rested on basic tort principles. Unlike *Long,* this action is based on contract principles; although Talley asserts fraud and conversion claims, the entire case is premised upon the agreement between the parties. OCGA § 51-10-1 provides: "[t]he owner of personalty is entitled to its possession. Any deprivation of such possession is a tort for which an action lies." See generally *Grant v. Newsome,* 201 Ga. App. 710 (411 SE2d 796) (1991). By asserting that the instant action is one for conversion, Talley begs the underlying contractual question. In like manner, we find Talley's reliance on *Commercial Credit Plan v. Parker,* 152 Ga. App. 409 (263 SE2d 220) (1979), also

misplaced.

In cases involving contract principles, "[t]he rule of OCGA § 13-8-1 has been held inapplicable where the *object* of the contract is not illegal or against public policy, but where the illegality or immorality is only collateral or remotely connected to the contract." (Citations and punctuation omitted.) *Liles v. Still*, 176 Ga. App. 65, 66 (335 SE2d 168) (1985). "Where a contract grows *immediately out of*, and *is connected with*, an illegal or immoral act, a court of justice will not lend its aid to enforce it. . . . But if the promise be *entirely disconnected* with the illegal act, and is founded on a *new consideration*, it is not affected by the act." (Citations and punctuation omitted.) *Liles*, supra at 66. The very essence of the agreement here was to do that which was prohibited by Georgia law and accordingly, the trial court's order was proper. See generally *Samples v. Monroe*, 183 Ga. App. 187 (358 SE2d 273) (1987).

*Judgment affirmed. Pope, C. J., and Birdsong, P. J., concur.*

DECIDED FEBRUARY 22, 1994 —
RECONSIDERATION DENIED MARCH 9, 1994 — ▮▮▮▮▮▮

*Jones, Byington, Durham & Payne, Frank H. Jones, Davis, Gregory & Christy, Hardy Gregory, Jr.*, for appellant.

*Brinson, Askew, Berry, Seigler, Richardson & Davis, C. King Askew, Mark M. J. Webb, Shaw, Maddox, Graham, Monk & Boling, C. Wade Monk II, Smith, Price & Wright, S. David Smith, Jr.*, for appellees.